# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MEYERS DIVISION

| | |
|---|---|
| *In re Target Corp. Securities Class Action Litigation* | Lead Case No. 2:25-cv-00135-JLB-KCD |
| *In re Target Corp. Shareholder Derivative Litigation* | Lead Case No. 2:25-cv-00021-JLB-KCD |

## DERIVATIVE PLAINTIFFS' OPPOSITION TO
## DEFENDANTS' OMNIBUS MOTION TO TRANSFER

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ ii

I.   PRELIMINARY STATEMENT ........................................................ 1

II.  RELEVANT PROCEDURAL HISTORY ......................................... 5

   A.   The Securities Class Action .................................................... 5

   B.   The Derivative Action .......................................................... 6

   C.   The Minnesota Action and its Voluntary Dismissal ...................... 7

III. ARGUMENT ............................................................................ 9

   A.   Legal Standard .................................................................. 9

   B.   Derivative Plaintiffs Join Securities Plaintiffs' Arguments ........... 10

   C.   Derivative Plaintiffs' Choice to Litigate in this District is Entitled to Deference ...................................................................... 10

   D.   This Court is Best Equipped to Adjudicate all Claims in the Actions......... 12

   E.   Proceeding in this Court Presents No Meaningful Inconvenience............... 15

   F.   The Interest of Justice and Local Interest Weigh Against Transfer ............. 19

IV.  CONCLUSION........................................................................ 20

## TABLE OF AUTHORITIES

**Cases**

*Abernathy v. Davis,*
    2:17-cv-01163, 2018 WL 11448855 (N.D. Ala. Sept. 13, 2018)..........................12

*Acrotube, Inc. v. J.K. Fin. Grp., Inc.,*
    653 F. Supp. 470 (N.D. Ga. 1987)..........................................................................12

*Craig v. Target Corp.,*
    No. 2:23-cv-599, 2024 WL 4981026 (M.D. Fla. Dec. 4, 2024) ................. *passim*

*Dekle v. Glob. Digit. Sols., Inc.,*
    No. 15-0069, 2015 WL 3562412 (S.D. Ala. June 5, 2015)..................................12

*Deltona Transformer Corp. v. Noco Co.,*
    No. 6:19-cv-308, 2019 WL 5390476 (M.D. Fla. Sept. 16, 2019).......................17

*Demere v. Newlin,*
    No. CV405-91, 2005 WL 8156280 (S.D. Ga. Aug. 30, 2005) ............................12

*Duckworth v. Med. Electro-Therapeutics, Inc.,*
    768 F. Supp. 822, 825 (S.D. Ga. 1991) ...............................................................12

*Elliot Auto Supply Co. v. General Parts Distrib. LLC,*
    No. 12-1185, 2012 WL 3428969 (D. Minn. Aug. 14, 2012) ................................9

*Everest Indem. Ins. Co. v. Ro,*
    200 F. Supp. 3d 825 (D. Minn. 2016) ...................................................................9

*Halbert v. Credit Suisse AG,*
    358 F. Supp. 3d 1283 (N.D. Ala. 2018) ........................................................ 10, 12

*Jensen v. Best & Flanagan,*
    662 N.W.2d 876 (Minn. 2003) .............................................................................14

*Kococinski v. Collins,*
    935 F. Supp. 2d 909 (D. Minn. 2013) ..................................................................14

*Laica-Bhoge v. Eli Lilly & Co.*,
   No. 6:14-cv-1286, 2015 WL 3919515 (M.D. Fla. June 4, 2015)..........................17

*Lemberger v. Westinghouse Elec. Corp.*,
   No. 76-C-552, 1976 WL 834 (E.D.N.Y. Nov. 1, 1976)........................................11

*Liles v. Ginn-La W. End Ltd.*,
   631 F.3d 1242 (11th Cir. 2011) ..........................................................................10

*Long v. Sports44.com, Inc.*,
   No. 8:06-CV-2384, 2007 WL 3072405 (M.D. Fla. Oct. 19, 2007) .....................12

*Manuel v. Convergys Corp.*,
   430 F.3d 1132 (11th Cir. 2005) ........................................................................3, 9

*McIlvaine v. Arthrocare Corp.*,
   No. 08-08343, 2008 WL 11332000 (S.D. Fla. Oct. 28, 2008)......................10, 12

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*,
   675 F.3d 1169 (11th Cir. 1982) ............................................................................3

*Nat'l Tr. Ins. Co. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 223 F. Supp. 3d 1236,
   1243–44 (M.D. Fla. 2016) ..................................................................................15

*Nayak v. Star Clippers, Ltd. Corp.*,
   No. 12-23768, 2014 WL 1406438 (S.D. Fla. Mar. 11, 2014).............................14

*In re Ricoh Corp.*,
   870 F.2d 570 (11th Cir. 1989) ..............................................................................9

*Ritter v. Metro. Cas. Ins. Co.*,
   No. 4:19-cv-10105, 2019 WL 8014511 (S.D. Fla. Dec. 3, 2019)........................10

*SEC v. Taronis Techs., Inc.*,
   No. 8:22-cv-1939, 2023 WL 4134000 (M.D. Fla. June 22, 2023)............... *passim*

*Serefex Corp. v. Hickman Holdings, LP*,
   695 F. Supp. 2d 1331 (M.D. Fla. 2010) ..............................................................12

*Soliman v. Daimler AG*,
   No. 6:09-cv-00947, 2010 WL 11506980 (M.D. Fla. Jan. 22, 2010)...................13

*Steifel Labs., Inc. v. Galderma Labs., Inc.*,
    588 F. Supp. 2d 1336 (S.D. Fla 2008)....................................................................3

*In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*,
    754 N.W. 2d 544 (Minn. 2008) ...........................................................................14

*Vaccaro v. APS Healthcare Bethesda, Inc.*,
    No. 9637, 2016 WL 519866 (Del. Ch. Feb. 9, 2016)..........................................13

*Winter v. Farmers Educ. and Coop. Union of Am.*,
    259 Minn. 257 (1961).........................................................................................14

**Statutes**

15 U.S.C. § 78aa ............................................................................................................2

28 U.S.C. § 1404(a) ......................................................................................................9

Court-appointed Derivative Action Co-Lead Plaintiffs Portia E. McCollum and Ryan Murphy, together with additional plaintiff Chamandeep Kaur (collectively, "**Derivative Plaintiffs**") respectfully oppose Defendants' Omnibus Motion to Transfer the Actions to the District of Minnesota. ECF No. 51 (the "**Second Transfer Motion**").[1]

## I.    <u>PRELIMINARY STATEMENT</u>

This Derivative Action and the Securities Class Action are undeniably related. Both arise from Target's myriad misrepresentations regarding enterprise risks associated with the Company's embrace of certain DEI and ESG policies to which a substantial number of its customers objected. These risks manifested in the form of sustained consumer boycotts, and the resulting multi-billion-dollar decline in Target's revenue and market capitalization harmed both Target and its stockholders. Defendants concede that "judicial economy favors litigating the Actions together." Second Transfer Motion at 22. But after multiple unfavorable rulings in *Craig*, Defendants seek to transfer both Actions to Minnesota. Defendants' transparent attempt to forum shop for a second time should be denied.

---

[1] Capitalized terms which are not defined herein have the same meaning as the Second Transfer Motion and the Derivative Plaintiffs' Verified Consolidated Amended Stockholder Derivative Complaint. ECF No. 49. Unless otherwise noted: (*i*) all references to "ECF No. ___" or "Derivative Action, ECF No. ___" are to the docket in this Derivative Action; (*ii*) all emphasis in quotations has been added; and (*iii*) all internal citations, quotation marks, brackets, and ellipses appearing in original quotations have been omitted.

The Securities Class Action and the Derivative Action both assert claims under the Securities Exchange Act of 1934 (the "**Exchange Act**"). The Derivative Action also asserts related claims under state law against the Individual Defendants for breaches of fiduciary duties. The Exchange Act claims in both Actions may expressly be brought anywhere the statements were received or where the harm occurred. 15 U.S.C. § 78aa. In denying Defendants' previous motion to transfer *Craig* to Minnesota, *see Craig* ECF No. 68 (the "**First Transfer Motion**"), this Court properly held that:

> Congress has clearly provided liberal choice regarding actions under the Exchange Act. Accordingly, Plaintiffs chose to bring their claims in the Middle District of Florida, and the Court will not disturb Plaintiffs' choice unless Defendants have shown that the factors weigh in favor of transfer, ***which they have not***.

*Craig v. Target Corp.*, No. 2:23-cv-599, 2024 WL 4981026, at *5 (M.D. Fla. Dec. 4, 2024). In holding that this District is a proper venue, the Court noted that:

> Target has more than 75 stores in the Middle District of Florida. Defendants neither contest nor refute… that Target transacts business in this District. Additionally, the purported violative proxy statements were directed into this District[.] Interestingly, nearly as many Target Directors reside in this District as the directors residing in Minnesota. Accordingly, the Court finds that venue is proper in the Middle District of Florida.

*Id.* at *3.

Defendants bear the heavy burden of showing that transfer is warranted. *SEC v. Taronis Techs., Inc.*, No. 8:22-cv-1939, 2023 WL 4134000, at *2 (M.D. Fla.

June 22, 2023) ("The plaintiff's choice of form receives deference and, as a result, should not be disturbed unless clearly outweighed by other factors."). For the second time, Defendants fail to sustain that burden because they cannot show that the "balance of convenience of the parties *strongly* favors the defendant." *Steifel Labs., Inc. v. Galderma Labs., Inc.*, 588 F. Supp. 2d 1336, 1339 (S.D. Fla 2008) (emphasis original).

*First*, Defendants exaggerate Minnesota's centrality while minimizing Florida connections, modern litigation efficiencies, and the Eleventh Circuit's strong presumption favoring plaintiffs' chosen forum. "In the absence of compelling circumstances, the court initially seized of the controversy should be the one to decide the case." *Manuel v. Convergys Corp.,* 430 F.3d 1132, 1136 (11th Cir. 2005), citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.3d 1169, 1174 (11th Cir. 1982). Derivative Plaintiffs' choice to litigate in this District is entitled to deference.

*Second*, federal courts routinely interpret and apply state law without issue. Moreover, three of the seven claims in the Derivative Action are for violating provisions of the Exchange Act. The four state law claims in the Derivative Action are for breach of fiduciary duty, aiding and abetting, waste, and unjust enrichment— none of which present particularly challenging legal issues. The Court's familiarity

with the underlying facts and the substantial litigation efforts expended to date make this Court the best equipped to adjudicate all claims in the Actions.

**Third**, Defendants' assertions regarding inconvenience to parties, witnesses, or counsel are substantially undermined by modern litigation practices. Electronic discovery allows for efficient exchange of vast quantities of evidence without requiring a physical presence or any travel. Similarly, remote proceedings—such as virtual depositions, hearings, and even trials—are commonplace in federal courts after their widespread adoption during the Covid-19 pandemic. These advancements neutralize traditional convenience-based arguments, as participants from distant locations may engage fully without undue burden, thereby preserving judicial efficiency and access to justice. *See Craig*, 2024 WL 4981026, at *4.

**Finally**, the interests of justice and Florida's strong local interest in the Actions militate against transfer. In addition to Target's robust and meaningful connections to Florida, *see id.* at *5-6, the State of Florida is a nationwide leader in opposing overly broad DEI and ESG initiatives.

In light of these considerations, Defendants' Second Motion to Transfer should be denied, and the Actions advance expeditiously to trial in this appropriate venue.

## II.    RELEVANT PROCEDURAL HISTORY

The Court is familiar with the facts giving rise to the Actions from having presided over the substantial litigation activity to date. Below is the procedural history relevant to the Second Transfer Motion as it relates to the Derivative Action.

### A.    The Securities Class Action

On August 8, 2023, plaintiff Brian Craig filed a securities action in this Court against Target and thirteen of the fifteen Individual Defendants. *Craig* ECF No. 1. On November 28, 2023, plaintiff Craig and four additional Target stockholders filed an amended complaint. *Craig*, ECF No. 52.

On January 16, 2024, Defendants filed two concurrent motions: (*i*) a motion to dismiss the *Craig* action, *Craig*, ECF No. 70; and (*ii*) the First Transfer Motion. *Craig* ECF No. 68. The First Transfer Motion advanced many of the same arguments which Defendants seek to relitigate in the Second Transfer Motion. *Compare Craig*, ECF No. 68 at 11-22 *with* Derivative Action, ECF No. 52 at 13-25.

On December 4, 2024, the Court rejected Defendants' arguments and denied their motion to transfer *Craig* to Minnesota as well as their motion to dismiss. *Craig*, ECF Nos. 102, 103.

Subsequently, the City of Riviera Beach Police Pension Fund ("**Riviera**") and the Florida State Board of Administration ("**FSBA**," and together the "**Securities Plaintiffs**") brought separate securities class actions arising from the same events as

in *Craig*. On July 24, 2025, the Court consolidated the *Craig*, *Riviera*, and *FSBA* actions into the Securities Class Action. Riviera and FSBA's competing motions for appointment as lead plaintiff and approval of selection as lead counsel in the Securities Class Action are pending. Securities Class Action, ECF Nos. 56-63.

## B.    The Derivative Action

On January 9, 2025, plaintiff McCollum brought her stockholder derivative action here in light of the substantial litigation that had already occurred in this Court and mindful of its holding that "venue is proper in the Middle District of Florida." *Craig*, ECF No. 103 at 6. *See McCollum v. Cornell et al.*, Case No. 2:25-cv-00021 (M.D. Fla.). The *McCollum* action was brought derivatively on behalf of Target and asserts claims against fourteen of the fifteen Individual Defendants for violations of Sections 10(b), 14(a), and 20(a) of the Exchange Act; breach of fiduciary duties; aiding and abetting; waste of corporate assets; and unjust enrichment. *McCollum*, ECF No. 1.

On January 17, 2025, also recognizing the significant litigation that had already taken place in this Court and its holdings regarding transfer and venue, plaintiff Kaur filed his verified shareholder derivative complaint in this Court on behalf of Target against the same defendants and asserting substantially similar claims as in *McCollum*. *See Kaur*, ECF No. 1.

On January 24, 2025, similarly recognizing the significant litigation that had already occurred in this Court and its holdings regarding transfer and venue, plaintiff Murphy filed his verified stockholder derivative complaint in this Court on behalf of Target. *Murphy* alleges substantially similar claims as in *McCollum* and *Kaur* against all fifteen Individual Defendants. *See Murphy*, ECF No. 1.

On January 30, 2025, plaintiffs McCollum and Murphy moved to consolidate *McCollum, Kaur*, and *Murphy*; appoint co-lead plaintiffs, and approve their selection of co-lead counsel and liaison counsel. ECF No. 29. This Court granted the motion on July 16, 2025. ECF No. 48. The Court allowed Derivative Plaintiffs to file a consolidated amended complaint by July 30, 2025, and directed Defendants to respond by August 20, 2025, regardless of whether an amended pleading was filed. *Id.*

On July 30, 2025, Derivative Plaintiffs filed their Verified Consolidated Derivative Complaint on behalf of Target against all fifteen Individual Defendants, asserting claims for violations of Sections 10(b), 14(a), and 20(a) of the Exchange Act; breach of fiduciary duties; aiding and abetting; waste of corporate assets; and unjust enrichment. ECF No. 49.

### C.    The Minnesota Action and its Voluntary Dismissal

On July 1, 2025, nearly six months after *McCollum* was filed and five months after Derivative Plaintiffs' motion to consolidate, purported Target stockholder

7

Andrew Ranacis filed a derivative complaint on behalf of Target against the Individual Defendants in the District of Minnesota, alleging causes of action for violations of Section 14(a) of the Exchange Act and breach of fiduciary duties. *Ranacis*, ECF No. 1.

On July 17, 2025, Defendants moved to dismiss *Ranacis*, or alternatively to stay the case pending resolution of the Securities Class Action. *Ranacis*, ECF No. 35. Plaintiff Ranacis did not oppose the portion of Defendants' motion seeking to stay his case. *Id.* at 29.

Before plaintiff Ranacis's response was due, his counsel informed Derivative Plaintiffs' counsel that plaintiff Ranacis would voluntarily dismiss his action, paving the way for the Derivative Action to proceed in this Court. *See* Declaration of Daniel Tepper, Esq. in Opposition to Defendants' Omnibus Motion to Transfer ("**Tepper Decl.**") ¶ 4. Plaintiff Ranacis's counsel subsequently informed Derivative Plaintiffs' counsel that she had met and conferred with Defendants' counsel on August 5, 2025 regarding plaintiff Ranacis's voluntary dismissal, and that Defendants' counsel were conferring with their clients. *Id.* ¶ 5. Having received no further information, on August 8, 2025 Derivative Plaintiffs' counsel wrote to Defendants' counsel directly to determine their position on plaintiff Ranacis's voluntary dismissal. *Id.* ¶ 6, Ex. A. There was no bounceback or notification of any problem with delivery. *Id.* To date, Defendants' counsel has neither acknowledged nor responded to Derivative

8

Plaintiffs' counsel. *Id.* ¶ 7. Regardless, it is unlikely that a court will prevent a litigant from voluntarily dismissing his case. Accordingly, Defendants' arguments on the basis of *Ranacis* pending in Minnesota are moot.[2]

## III.  **ARGUMENT**

### A.  **Legal Standard**

The movant must demonstrate that the relevant factors strongly favor a discretionary transfer to a different venue under 28 U.S.C. § 1404(a). The relevant factors in the Eleventh Circuit are:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel*, 430 F.3d at 1135 n.1. "[T]he burden is on the movant to establish that the suggested forum is more convenient." *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th

---

[2] Derivative Plaintiffs refrained from moving to intervene in *Ranacis* solely based upon his counsel's representation that he would voluntarily dismiss his action in Minnesota. Tepper Decl. ¶ 4. Derivative Plaintiffs reserve the right to do so should Defendants oppose plaintiff Ranacis's voluntary dismissal of his case. In that event, Derivative Plaintiffs may seek to dismiss *Ranacis* without prejudice, transfer the case to this District, or stay the case until the resolution of their Derivative Action based upon, *inter alia*, the District of Minnesota's application of the "first filed" rule. *See, e.g., Everest Indem. Ins. Co. v. Ro*, 200 F. Supp. 3d 825, 833 (D. Minn. 2016) ("To conserve judicial resources and avoid conflicting rulings, the first-filed rule gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction."). The "first filed" rule applies when parallel actions are filed in two federal courts. *See, e.g., Elliot Auto Supply Co. v. General Parts Distrib. LLC*, No. 12-1185, 2012 WL 3428969, at *2 (D. Minn. Aug. 14, 2012).

Cir. 1989). "Because there is a presumption against transfer, neutral factors weight against transfer." *Ritter v. Metro. Cas. Ins. Co.*, No. 4:19-cv-10105, 2019 WL 8014511, at *3 (S.D. Fla. Dec. 3, 2019).

### B.    Derivative Plaintiffs Join Securities Plaintiffs' Arguments

Derivative Plaintiffs understand that all Securities Plaintiffs oppose Defendants' motion to transfer. As both Actions arise from the same underlying facts, Derivative Plaintiffs join and adopt Securities Plaintiffs' respective arguments opposing the Second Transfer Motion to the extent they are not inconsistent with the additional arguments below.

### C.    Derivative Plaintiffs' Choice to Litigate in this District is Entitled to Deference

Plaintiffs' choice of forum is entitled to "especially" strong weight "in Securities [Exchange] Act cases where Congress established a statutory policy of affording plaintiffs the broadest possible forum choice." *McIlvaine v. Arthrocare Corp.*, No. 08-08343, 2008 WL 11332000, at *1 (S.D. Fla. Oct. 28, 2008). All the more so in cases with national scope. *Halbert v. Credit Suisse AG*, 358 F. Supp. 3d 1283, 1287 (N.D. Ala. 2018) (denying transfer under Eleventh Circuit framework).

"The venue provision of the 1934 Act is strikingly broad and allows suits to be brought anywhere that the Act is violated or a defendant does business or can otherwise be found." *Craig*, 2024 WL 4981026, at *2, quoting and citing *Liles v. Ginn-La W. End Ltd.,* 631 F.3d 1242, 1253-54 (11th Cir. 2011). An Exchange Act

violation includes anything from "a single press release [] disseminated through a newspaper or over the Dow-Jones board tape, or if a single telephone call is made from a district," or "where a single misleading proxy has been mailed to one shareholder who resides in a district." *Lemberger v. Westinghouse Elec. Corp.*, No. 76-C-552, 1976 WL 834, at *2 (E.D.N.Y. Nov. 1, 1976) (collecting cases).

Here, Derivative Plaintiffs bring Exchange Act claims under Sections 10(b), 14(a), and 20(a). ECF No. 49 ¶¶ 222-245. As Judge Barber explained in the context of an Exchange Act suit, "Ultimately, transfer can only be granted where the balance of convenience of the parties strongly favors the defendant." *Taronis*, 2023 WL 4134000, at *2. Target – *once again* – cannot satisfy that burden.

Defendants focus heavily on Target being headquartered in Minnesota. While Exchange Act claims inherently focus on the company at issue, Congress went out of its way to allow venue outside the company's home district. "If transfers were granted in securities cases with too much abandon, the effect would be to undermine Congressional efforts to enforce securities laws by minimizing burdens on plaintiffs in civil suits." *Lemberger*, 1976 WL 834, at *5. Contrary to Defendants' suggestion that cases asserting Exchange Act claims are almost uniformly transferred to a company's home district, Courts in the Eleventh Circuit frequently deny motions to transfer private cases under the Exchange Act to defendant companies' home

venues.[3] Moreover, neither Target's Charter nor its Bylaws have a forum selection clause for either Exchange Act or derivative claims.[4]

Derivative Plaintiffs' choice of venue is thus given substantial deference, and the fact that Target's headquarters are located elsewhere is not. *See McIlvaine*, 2008 WL 11332000, at *2. As noted above, both Actions are national in scope and there are significant ties between the Actions and this District. *Craig*, 2024 WL 4981026, at *5 (denying transfer where connections to Florida are neutral or stronger than to Minnesota).

### D.    This Court is Best Equipped to Adjudicate all Claims in the Actions

Defendants concede that "judicial economy favors litigating the Actions together" and that this Court previously held that it is just as well-equipped to adjudicate "federal securities law" as the District of Minnesota. Second Transfer Motion at 22. Defendants nevertheless seek to move the Actions across the country.

---

[3] *See, e.g., Halbert*, 358 F. Supp. at 1286–88; *Abernathy v. Davis*, 2:17-cv-01163, 2018 WL 11448855 (N.D. Ala. Sept. 13, 2018); *Dekle v. Glob. Digit. Sols., Inc.*, No. 15-0069, 2015 WL 3562412, at *4–6 (S.D. Ala. June 5, 2015); *Serefex Corp. v. Hickman Holdings, LP*, 695 F. Supp. 2d 1331, 1339 (M.D. Fla. 2010); *Long v. Sports44.com, Inc.*, No. 8:06-CV-2384, 2007 WL 3072405 (M.D. Fla. Oct. 19, 2007); *Demere v. Newlin*, No. CV405-91, 2005 WL 8156280 (S.D. Ga. Aug. 30, 2005); *Duckworth v. Med. Electro-Therapeutics, Inc.*, 768 F. Supp. 822, 825, 831–32 (S.D. Ga. 1991); *Acrotube, Inc. v. J.K. Fin. Grp., Inc.*, 653 F. Supp. 470, 477 (N.D. Ga. 1987).

[4] *See Amended and Restated Articles of Incorporation of Target Corporation* (Jun. 9, 2010), https://www.sec.gov/Archives/edgar/data/27419/000110465910033363/a10-11723_1ex3da.htm; *Bylaws of Target Corporation (As Amended and Restated Through January 15, 2025* (Jan. 15, 2025), https://www.sec.gov/Archives/edgar/data/27419/000002741925000002/exhibit32january 20258-k.htm.

Having previously denied Defendants' substantive motion to dismiss *Craig* as well as the First Transfer Motion, this Court is already familiar with the substantially identical factual background in the Derivative Action—*i.e.*, Target's false and misleading statements concerning its DEI and ESG policies. That understanding will help the Court decide the issues in the Actions efficiently. *See, e.g.*, *Vaccaro v. APS Healthcare Bethesda, Inc.*, No. 9637, 2016 WL 519866, at *5 (Del. Ch. Feb. 9, 2016) (the U.S. District Court is "capable of providing prompt and complete justice" where it has "already granted one motion to dismiss and is sufficiently familiar with the issues."). This Court is best positioned to resolve the Actions' substantially identical factual allegations and very similar claims.

This Court is at least as well-equipped as the District of Minnesota to adjudicate Derivative Plaintiffs' supplemental claims under Minnesota law—if not better equipped because of its understanding of the underlying facts. Indeed, "federal courts are deemed capable of applying the law of other states," which is why this factor "is accorded little weight on a motion for discretionary transfer of venue." *Soliman v. Daimler AG*, No. 6:09-cv-00947, 2010 WL 11506980, at *7 (M.D. Fla. Jan. 22, 2010).[5]

---

[5] Moreover, in diversity jurisdiction cases, courts adhere to the *Erie* doctrine, applying the forum state's choice-of-law rules while capably handling substantive laws from sister states—a task federal judges perform routinely without issue. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

Counsel is aware of only three decisions from the Minnesota Supreme Court relevant to evaluating the threshold issue demand futility at the pleading stage.[6] Moreover, Minnesota law is similar to other states' laws in important respects. *See, e.g., Kococinski v. Collins*, 935 F. Supp. 2d 909, 917 (D. Minn. 2013) (excusing demand if a majority of the board faces a substantial likelihood of liability— Delaware law—is "a fair characterization of the burden [plaintiff] faces in establishing demand futility under Minnesota law."). Because the relevant Minnesota law is not "exceptionally arcane," this factor "is neutral." *Nayak v. Star Clippers, Ltd. Corp.*, No. 12-23768, 2014 WL 1406438, at *8 (S.D. Fla. Mar. 11, 2014), quoting and citing *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western Dist. of Tex.*, 571 U.S. 49, 68-69 (2013) ("We are not aware of any exceptionally arcane features of Texas contract law that are likely to defy comprehension by a federal judge sitting in Virginia.").

---

[6] *See Winter v. Farmers Educ. and Coop. Union of Am.*, 259 Minn. 257, 267 (1961) (a demand upon a company's board of directors to bring the claims asserted in a derivative action "is not required where it is plain from the circumstances that it would be futile."); *In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 754 N.W. 2d 544, 550 n.5 (Minn. 2008) ("We have indicated that a shareholder bringing a derivative action must first demand that the board itself pursue the action…. The demand requirement may be excused, however, when the board suffers from a conflict of interest regarding the subject matter of the derivative suit.") (citing *id*); *Jensen v. Best & Flanagan*, 662 N.W.2d 876, 883 (Minn. 2003) ("[C]ourts apply the business judgment rule when evaluating the decision by a board of directors whether to join or quash a derivative suit belonging to the corporation") *N.B.*, demand is excused when a board of directors is incapable of exercising its good faith business judgment.

### E.    Proceeding in this Court Presents No Meaningful Inconvenience

Defendants' arguments regarding witness convenience rest on speculative assertions about the location and importance of certain non-party witnesses, while ignoring modern litigation practices that minimize any purported burdens. As this Court previously held in denying Defendants' First Motion to Transfer, electronic documents and remote video depositions greatly diminish the burdens associated with discovery. *Craig*, 2024 WL 4981026, at *4; *see also Nat'l Tr. Ins. Co. v. Pa. Nat'l Mut. Cas. Ins. Co.*, 223 F. Supp. 3d 1236, 1243–44 (M.D. Fla. 2016) ("[T]he location of relevant documents and other tangible sources is no longer a heavily weighted factor... given that technological advances now permit the electronic transmittal of documents."). Defendants fail to demonstrate any material change in circumstances from the First Transfer Motion warranting a different outcome, let alone satisfy their heavy burden of making a "convincing showing" of inconvenience. *Taronis*, 2023 WL 4134000, at *4.

Defendants claim that key non-employee witnesses, such as former board members, consultants, and auditors, live in Minnesota and would be inconvenienced by testifying in Florida. *See* Second Motion to Transfer at 16. This argument is overstated and unpersuasive because "vague statements about the convenience of unknown and unnamed witnesses is insufficient to convince" courts to transfer venue. *Combs v. Fla. Dep't of Corr.*, 461 F. Supp. 3d 1203, 1215 (N.D. Fla. 2020).

Indeed, the Declaration of Erin Rath Moos in Support of Target's Omnibus Motion to Transfer (the "**Moos Decl.**") merely restates facts that this Court deemed insufficient when it denied the First Motion to Transfer. *Craig*, 2024 WL 4981026, at *4-5. It provides no new evidence of hardship, relying instead on speculation about witness locations and operations that modern tools render neutral. *See Taronis*, 2023 WL 4134000, at *3 n.7. Moreover, not all identified non-employee witnesses are based in Minnesota. For example, Target director defendant Grace Puma lives within this District in Tampa, and others are scattered nationwide. *See Craig*, 2024 WL 4981026, at *4 (noting that dispersed defendants undermine convenience claims).

Even for Minnesota residents, widely-used remote video technology eliminates travel burdens for depositions, which are the primary discovery mechanism in securities and derivative actions. *Id.; Combs*, 461 F. Supp. at 1209 ("[U]nder this factor, the movant should provide at least... whether some other mechanism—such as videotaped deposition testimony—could be utilized instead.")

Defendants also assert that Minnesota is more convenient than Florida because current and former Target employees involved in preparing its public securities filings and overseeing the 2023 Pride Collection live in Minnesota. Second Transfer Motion at 17. This ignores Target's own remote work policies, which require office presence only one week per quarter. *Craig*, 2024 WL 4981026, at *5.

16

Indeed, the emphasis in the Moos Decl. on Target's employees' residence in Minnesota ignores Target's evolving remote work policies, which in 2025 prioritize flexibility (*e.g.*, employees select in-office days, with remote options remaining standard). *See* Moos Decl. ¶¶ 6-26, 28-40 (describing teams like the Reputation Team and Steering Committee as HQ-based but also meeting virtually and in locations outside of Minnesota). Defendants can hardly claim inconvenience when Target's own corporate functions make use of remote meeting technology.

Moreover, Defendants provide no affidavits from individuals attesting to personal hardship, rendering claims of inconvenience speculative. *Taronis*, 2023 WL 4134000, at *3 n.7. Non-employee witnesses like former directors and auditors based in Minneapolis fare no better; their testimony is hypothetical, and courts require "detailed information" sufficient to establish that the testimony of a witness is "necessary for trial" to consider this factor. *Deltona Transformer Corp. v. Noco Co.,* No. 6:19-cv-308, 2019 WL 5390476, at *4 (M.D. Fla. Sept. 16, 2019) (denying transfer because of speculative arguments). *See also Laica-Bhoge v. Eli Lilly & Co.*, No. 6:14-cv-1286, 2015 WL 3919515, at *5 (M.D. Fla. June 4, 2015) ("A general allegation that witnesses will be necessary, without identifying those necessary witnesses and indicating what their testimony at trial will be does not merit transfer under § 1404"). Moreover, the testimony of auditors is rarely pivotal in derivative cases (like this), which do not involve accounting machinations.

The Moos Decl. overstates Minnesota connections yet ignores Florida ties. While it portrays Minnesota as the "center of gravity" and asserts what might have occurred there, Moos Decl. ¶¶ 6-26, 28-40, it conveniently ignores the national scope of the claims in the Action and the substantial ties to Florida which this Court recognized in denying the First Motion to Transfer. *Craig*, 2024 WL 4981026, at *5.

Given that the Actions focus on Target's shareholder statements, the Court could just as well consider the location of Target's annual shareholder meetings as the relevant location. However, the Moos Decl. conveniently ignores that Target's 2023 shareholder meeting was held in Austin, Texas, and that Target's 2020, 2021, 2022, 2024, and 2025 shareholder meetings all occurred exclusively online.[7] Moos Decl. ¶¶ 6-26, 28-40. In sum, there is no meaningful inconvenience to any party or potential non-party witness sufficient to justify transferring the Actions. The widespread use of electronic discovery and remote video technology—including by Target itself—undercuts any claim of inconvenience.

---

[7]*See* Target, *Shareholder Information*, Target, *Shareholder Information,* https://corporate.target.com/investors/annual/2019-annual-report/for-investors/shareholder-information ("[W]e are holding the [2020] Annual Meeting in a virtual-only meeting format[.]"); https://corporate.target.com/investors/annual/2020-annual-report/for-investors/shareholder-information ("[W]e are holding the 2021 Annual Meeting in a virtual-only meeting format[.]"); https://corporate.target.com/investors/annual/2021-annual-report/for-investors/shareholder-information ("We are holding the 2022 Annual Meeting in a virtual-only meeting format."); https://corporate.target.com/investors/annual/2022-annual-report/for-investors/shareholder-information; ("The 2023 Annual Meeting is scheduled for June 14, 2023… in Austin, TX[.]"); https://corporate.target.com/investors/annual/2023-annual-report/for-investors/shareholder-information ("We are holding the 2024 Annual meeting in a virtual-only meeting format."); https://corporate.target.com/investors/annual/2024-annual-report/for-investors/shareholder-information ("We are holding the 2025 Annual Meeting in a virtual-only meeting format.").

### F.    <u>The Interest of Justice and Local Interest Weigh Against Transfer</u>

This Court was unpersuaded by Target's argument in the First Transfer Motion that trial efficiency and the interest of justice weighed in favor of transfer. *Craig*, 2024 WL 4981026 at \*6.  Nothing has changed that should alter the Court's position. To the contrary, equitable and public interest factors support keeping the Actions in Florida.

Target has faced significant backlash in Florida related to its embrace of DEI and ESG initiatives, particularly those tied to its 2023 Pride Campaign. This backlash has manifested through consumer boycotts[8] and commencement of the Actions. More generally, Florida has emerged as a nationwide leader in actively opposing DEI and ESG. For example, Governor Ron DeSantis has signed laws banning DEI programs in public universities and state agencies.[9] Attorney General James Uthmeier has launched investigations into proxy advisory firms for adopting and enforcing DEI and ESG initiatives at the expense of maximizing shareholder value to the financial detriment of Floridians' investments and in violation of

---

[8] ECF No. 49 at ¶¶ 6, 9, 62, 70, 123-24.

[9] Ana Faguy, *DeSantis Signs Bill Banning Public Colleges From Funding Diversity Programs*, FORBES (May 15, 2023), https://www.forbes.com/sites/anafaguy/2023/05/15/desantis-signs-bill-banning-public-colleges-from-funding-diversity-programs/; Tristan Wood, *DeSantis Announces "Florida DOGE" Task Force to Target DEI Initiatives, Spending*, WFSU (Feb. 24, 2025), https://news.wfsu.org/state-news/2025-02-24/desantis-announces-florida-doge-task-force-to-target-dei-initiatives-spending.

numerous Florida laws.[10] Florida's strong interest the Actions is further evidenced by Attorney General Uthmeier filing suit against Target on behalf of the Florida State Board of Administration and seeking appointment as Liaison Counsel in the Securities Class Action. *See* Securities Class Action, ECF No. 56.[11]

Attorney General Uthmeier's direct and active interest in the Securities Class Action when no other state's attorney general or other government body has done the same demonstrates that the Actions belong in this Court. Florida's demonstrated strong government interest in opposing DEI and ESG provides compelling public policy reasons for adjudicating claims that challenge such corporate pursuits in Florida.

## IV.   **CONCLUSION**

For the reasons above and those put forward by the Securities Plaintiffs, the Court should deny Defendants' Second Motion to Dismiss and grant such other and further relief as the Court deems just and proper.

---

[10] *Attorney General James Uthmeier Announces Investigation into Glass Lewis & Co. and Institutional Shareholder Services Inc. for ESG and DEI Policies*, OFFICE OF ATTORNEY GENERAL (PRESS RELEASE) (Mar. 20, 2025), https://www.myfloridalegal.com/newsrelease/attorney-general-james-uthmeier-announces-investigation-glass-lewis-co-and.

[11] *See also* Rachel del Guidice, *Florida Attorney General Says He is Putting the State's Work Companies 'On Notice'*, FOX NEWS (Apr. 16, 2025), https://www.foxnews.com/media/florida-attorney-general-says-he-putting-states-woke-companies-on-notice; *Florida Attorney General James Uthmeier and America First Legal File Class Action Lawsuit Against Target for Misleading and Defrauding Investors Over Market Risks of LGBTQ Activism*, OFFICE OF ATTORNEY GENERAL (PRESS RELEASE) (Feb. 20, 2025), https://www.myfloridalegal.com/newsrelease/florida-attorney-general-james-uthmeier-and-america-first-legal-file-class-action.

Dated: August 22, 2025

**COOK LAW, P.A.**

*/s/ William J. Cook*
William J. Cook
610 East Zack Street, Suite 505
Tampa, FL  33602
(813) 489-1001

*Liaison Counsel for Derivative Plaintiffs*

**RIGRODKSY LAW, P.A.**
Seth D. Rigrodsky (*pro hac vice*)
Vincent A. Licata (*pro hac vice*)
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
(516) 683-3516
sdr@rl-legal.com
vl@rl-legal.com

**LEVI & KORSINSKY, LLP**
Gregory M. Nespole (*pro hac vice*)
Daniel Tepper (*pro hac vice*)
Correy A. Suk (*pro hac vice*)
33 Whitehall Street, 27th Floor
New York, NY 10004
(212) 363-7500
dtepper@zlk.com
csuk@zlk.com
gnespole@zlk.com

*Co-Lead Counsel for Derivative
Plaintiffs*

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna (*pro hac vice*)
Gregory M. Egleston (*pro hac vice*)
260 Madison Avenue, 22nd Floor
New York, NY 10016
(212) 983-1300
tjmckenna@gme-law.com

21

egleston@gme-law.com

*Additional Counsel for Derivative*
*Plaintiffs*

**GRABAR LAW OFFICE**
Joshua H. Grabar
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (267) 507-6085
Facsimile: (267) 507-6048
jgrabar@grabarlaw.com

*Additional    Counsel    for    Derivative*
*Plaintiff McCollum*