# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

|  |  |
|---|---|
| *In re Target Corp. Shareholder Derivative Litigation* | Case No. 2:25-cv-00021-JLB-KCD |
|  | **ORAL ARGUMENT REQUESTED** |

# TARGET AND DEFENDANTS' MOTION
## TO STAY OR, IN THE ALTERNATIVE, DISMISS

**CONTENTS**

ARGUMENT ...................................................................................................................2

I.    THE DERIVATIVE ACTION SHOULD BE STAYED DURING
      THE PENDENCY OF THE SECURITIES CLASS ACTION. .....................2

      A.    A Stay Is Necessary To Avoid Prejudice to Target. .............................3

      B.    A Stay Would Streamline the Issues and Promote Judicial
            Economy. ...............................................................................................5

      C.    A Stay Will Not Prejudice Plaintiffs. ....................................................6

II.   THE DERIVATIVE ACTION MUST BE DISMISSED BECAUSE
      PLAINTIFFS FAILED TO MAKE A DEMAND ON TARGET'S
      BOARD. .......................................................................................................6

      A.    Minnesota's SLC Statute Provides a "Road to Redress." ......................7

      B.    Plaintiffs' Theories of Futility Fail Due to Minnesota's SLC
            Statute. ...................................................................................................9

      C.    Plaintiffs' Arguments Would Fail Under Delaware Law Too. ............10

III.  PLAINTIFFS HAVE NOT STATED ANY VIABLE CLAIM. ...................12

      A.    The Federal Securities Claims Must Be Dismissed. ...........................12

            1.    The Section 10(b) Claim Fails To Plead Reliance or
                  Scienter. ....................................................................................12

            2.    The Section 14(a) Claim Fails To Connect Any
                  Misrepresentation to a Cognizable Injury. ...............................15

            3.    The Section 20(a) Claim Fails Without a Primary
                  Violation. ..................................................................................18

      B.    The Minnesota Law Claims Must Be Dismissed. ...............................18

            1.    Plaintiffs Cannot State a Duty of Loyalty Claim. .....................19

            2.    Plaintiffs Cannot State a Duty of Care Claim for Two
                  Reasons. ....................................................................................22

            3.    Plaintiffs' Miscellaneous Claims Fail. .....................................24

CONCLUSION .............................................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.R. Demarco Enters. v. Ocean Spray Cranberries*,
   2002 WL 31820970 (Del. Ch. Nov. 26, 2002) ....................................................10

*Amanda Acquisition v. Universal Foods*,
   708 F.Supp. 984 (E.D. Wis. 1989), *aff'd*, 877 F.2d 496 (7th Cir.
   1989) .................................................................................................................19

*Atkins v. Tony Lama*,
   624 F.Supp.250 (S.D. Ind. 1985).......................................................................13

*Bakhaty v. CHI St. Vincent Hot Springs*,
   2025 WL 1568838 (E.D. Ark. June 3, 2025) ....................................................22

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
   980 F.Supp.2d 564 (S.D.N.Y. 2013), *aff'd*, 566 F. App'x 93 (2d
   Cir. 2014) ..........................................................................................................15

*Baron v. Strawbridge & Clothier*,
   646 F.Supp. 690 (E.D. Pa. 1986).......................................................................19

*Matter of Bear Stearns Litig.*,
   23 Misc. 3d 447 (N.Y. Sup. Ct. Dec. 4, 2008) .................................................24

*Breault v. Folino*,
   2002 WL 31974381 (C.D. Cal. Mar. 15, 2002)...........................................3, 5, 6

*Brehm v. Eisner*,
   746 A.2d 244 (Del. 2000) ............................................................................24, 25

*Brenner v. Albrecht*,
   2012 WL 252286 (Del. Ch. Jan. 27, 2012)..........................................................3

*In re Brocade Commc'ns Deriv. Litig.*,
   615 F.Supp.2d 1018 (N.D. Cal. 2009).................................................................13

*Bryant v. Avado Brands, Inc.*,
   187 F.3d 1271 (11th Cir. 1999) ...........................................................................3

ii

*In re Buca S'holder Deriv. Litig.*,
  2005 WL 6750825 (Minn. Dist. Ct. Nov. 9, 2005) ..............................................10

*In re Caremark Int'l Derivative Litig.*,
  698 A.2d 959 (Del. Ch. 1996) ...............................................................................20

*Carvelli v. Ocwen Fin. Corp.*,
  934 F.3d 1307 (11th Cir. 2019) ...............................................................12, 14, 18

*In re Celgene Corp. Sec. Litig.*,
  741 F.Supp.3d 217 (D.N.J. 2024) .........................................................................13

*Chen v. Howard-Anderson*,
  87 A.3d 648 (Del. Ch. 2014) ..........................................................................19, 24

*In re Citigroup Deriv. Litig.*,
  2009 WL 2610746 (S.D.N.Y. Aug. 25, 2009)......................................................13

*Daily Income Fund v. Fox*,
  464 U.S. 523 (1984).............................................................................................11

*Diedrick v. Helm*,
  14 N.W.2d 913 (Minn. 1944) ...............................................................................19

*Dixon v. Ladish Co.*,
  785 F.Supp.2d 746 (E.D. Wis. 2011) ...................................................................19

*Edward J. Goodman Life Income Tr. v. Jabil Cir.*,
  594 F.3d 783 (11th Cir. 2010) .......................................................12, 15, 17, 18

*Edward J. Goodman Life Income Tr. v. Jabil Cir.*,
  595 F.Supp.2d 1253 (M.D. Fla. 2009), *aff'd*, 594 F.3d 783 (11th
  Cir. 2010) .......................................................................................................14, 15

*Encarnacion v. Fin. Corp. of Am.*,
  2018 WL 5631045 (M.D. Fla. Oct. 31, 2018) ......................................................3

*In re First Solar Deriv. Litig.*,
  2012 WL 6570914 (D. Ariz. Dec. 17, 2012).........................................................5

*Freedman v. magicJack Vocaltec*,
  963 F.3d 1125 (11th Cir. 2020) ...........................................................................16

iii

*Garfield v. NDC Health Corp.*,
   466 F.3d 1255 (11th Cir. 2006) ..............................................................24

*Gerring Props. v. Gerring*,
   2017 WL 10662042 (Minn. Dist. Ct. Nov. 28, 2017) ........................................9

*In re GoPro*,
   2020 WL 2036602 (Del. Ch. Apr. 28, 2020).....................................................21

*Hastey v. Welch*,
   449 F.Supp.3d 1053 (D. Kan. 2020).................................................................18

*Holdahl v. Bioergonomics*,
   2012 WL 3061774 (Minn. Dist. Ct. Feb. 8, 2012),
   *aff'd*, 2013 WL 401885 (Minn. Ct. App. Feb. 4, 2013) ....................................23

*Horn Silver Min. v. Ryan*,
   44 N.W. 56 (Minn. 1889) ................................................................................24

*Hueler v. Seeland*,
   2012 WL 7749256 (Minn. Dist. Ct. Dec. 5, 2012).............................................10

*Iron Workers Mid-S. Pension Fund v. Davis*,
   2013 WL 6858567 (D. Minn. Dec. 30, 2013) ....................................................25

*Iron Workers Mid-S. Pension Fund v. Davis*,
   93 F.Supp.3d 1092 (D. Minn. 2015)................................................................20

*J.I. Case Co. v. Borak*,
   377 U.S. 426 (1964)........................................................................................16

*Janus Cap. Grp. v. First Deriv. Traders*,
   564 U.S. 135 (2011)........................................................................................13

*Rubenstein ex rel. Jefferies Fin. Grp. v. Adamany*,
   2023 WL 6119810 (2d Cir. Sept. 19, 2023) ......................................................18

*Kamal v. Baker Tilly US, LLP*,
   2022 WL 1050053 (D. Minn. Apr. 7, 2022)......................................................25

*Kamen v. Kemper Fin. Servs.*,
   500 U.S. 90 (1991)...........................................................................................7

iv

*Kernaghan v. Franklin*,
2008 WL 4450268 (S.D.N.Y. Sept. 29, 2008) .....................................................11

*Kirwin v. Price Commc'ns*,
274 F.Supp.2d 1242 (M.D. Ala. 2003), *aff'd in part, rev'd in part
on other grounds*, 391 F.3d 1323 (11th Cir. 2004)..............................................18

*Kitley v. IsoRay*,
2017 WL 4737244 (D. Minn. Oct. 19, 2017) .......................................................9

*Kococinski v. Collins*,
935 F. Supp. 2d 909 (D. Minn. 2013)................................................8, 10, 11, 22

*La. Mun. Police Emps. Ret. Sys. v. Finkelstein*,
2012 WL 10057353 (Minn. Dist. Ct. May 29, 2012).......................................7, 10

*Lee v. Fisher*,
70 F.4th 1129 (9th Cir. 2023) ...........................................................................16

*Lodge Mfg. v. Gibson Overseas*,
2019 WL 9443180 (C.D. Cal. Sept. 24, 2019) .....................................................6

*Lusk v. Akradi*,
2017 WL 3382301 (D. Minn. Aug. 6, 2017)..................................................19, 20

*Maldonado v. Flynn*,
597 F.2d 789 (2d Cir. 1979) ..............................................................................13

*Markewich v. Collins*,
622 F.Supp.2d 802 (D. Minn. 2009)...................................................................24

*McDonald v. Abizaid*,
2018 WL 692006 (N.D. Ohio Feb. 2, 2018).........................................................5

*McDowell v. Bracken*,
794 App'x 910 (11th Cir. 2019)..........................................................................18

*McDowell v. Bracken*,
317 F.Supp.3d 1162 (S.D. Fla. 2018), *aff'd*, 794 F. App'x 910
(11th Cir. 2019)...............................................................................10, 14, 17

*In re Medtronic Deriv. Litig.*,
68 F. Supp. 3d 1054 (D. Minn. 2014).............................................................7, 9

*In re Medtronic S'holder Litig.*,
  900 N.W.2d 401 (Minn. 2017) ........................................................................16

*In re Medtronic*,
  2015 WL 1387937 (Minn. Dist. Ct. Mar. 20, 2015), *aff'd*, 2016
  WL 281237 (Minn. Ct. App. Jan. 25, 2016), *aff'd in part, rev'd in
  part on other grounds*, 900 N.W.2d 401 (Minn. 2017)................................16, 17

*Metro. Transp. Pension Plan v. Welbilt*,
  2020 WL 905591 (M.D. Fla. Feb. 6, 2020)......................................................15

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970).........................................................................................15

*Mizzaro v. Home Depot*,
  544 F.3d 1230 (11th Cir. 2008) ...................................................................13, 14

*Mukamal v. Bakes*,
  378 F. App'x 890 (11th Cir. 2010) ...............................................................4, 18

*N.W. Racquet Swim & Health Clubs v. Deloitte & Touche*,
  535 N.W.2d 612 (Minn. 1995) .........................................................................16

*Nat'l Ctr. for Pub. Pol'y Rsch. v. Schultz*,
  2023 WL 5945958 (E.D. Wash. Sept. 11, 2023)..........................................11, 23

*Newman v. KKR Phorm Invs.*,
  2023 WL 5624167 (Del. Ch. Aug. 31, 2023) ....................................................24

*O'Connor v. Huber*,
  2022 WL 17585247 (S.D. Ohio Dec. 12, 2022)...................................................6

*In re Ormat Techs.*,
  2011 WL 3841089 (D. Nev. Aug. 29, 2011)........................................................5

*In re Patterson Cos. Sec., Deriv. & ERISA Litig.*,
  479 F.Supp.2d 1014 (D. Minn. 2007)................................................................10

*Pemberton v. Anderson*,
  412 F.Supp.3d 1058 (D. Minn. 2019)..........................................................8, 9, 10

*Pillsbury v. Honeywell*,
  191 N.W.2d 406 (Minn. 1971) ..........................................................................11

vi

*Richard Thorpe & Darrel Weisheit v. Walter Inv. Mgmt.*,
111 F.Supp.3d 1336 (S.D. Fla. 2015) ....................................................13

*Ritchie v. Baker*,
2025 WL 2048014 (Del. Ch. July 22, 2025) ...........................................10

*Rosenblum v. Sharer*,
2008 WL 9396534 (C.D. Cal. July 28, 2008)........................................4, 5

*Ross v. Bernhard*,
396 U.S. 531 (1970)........................................................................................4

*Rothenberg v. Sec. Mgmt. Co.*,
667 F.2d 958 (11th Cir. 1982) .................................................................11

*Routh v. Kurtz*,
1:24-cv-01031, ECF 5 (W.D. Tex. Nov. 20, 2024)...............................6

*Routh v. Kurtz*,
2024 WL 5468511 (W.D. Tex. Dec. 2, 2024) ........................................6

*Seinfeld v. Verizon Commc'ns*,
909 A.2d 117 (Del. 2006) ...........................................................................23

*Sellers v. Lawson*,
2009 WL 10698793 (S.D. Fla. Mar. 30, 2009) .................................3, 5

*Silverstein v. Larson*,
2005 WL 435241 (D. Minn. Feb. 25, 2005).........................................10

*Simeone v. Walt Disney*,
302 A.3d 956 (Del. Ch. 2023) ..........................................................10, 23

*Southtown Plumbing v. Har-Ned Lumber*,
493 N.W.2d 137 (Minn. Ct. App. 1992)................................................25

*Staehr v. Miller*,
2010 WL 11030716 (S.D. Fla. Mar. 31, 2010) ................13, 14, 15, 25

*In re STEC, Inc. Deriv. Litig.*,
2012 WL 8978155 (C.D. Cal. Jan. 11, 2012)......................................5, 6

*Stone v. Ritter*,
911 A.2d 362 (Del. 2006) .........................................................................................20

*Swanson v. Weil*,
2012 WL 4442795 (D. Colo. Sept. 26, 2012)..........................................................18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)....................................................................................................3

*In re The Home Depot Deriv. Litig.*,
223 F.Supp.3d 1317 (N.D. Ga. 2016).......................................................................17

*United States v. Millennium Physician Grp.*,
2023 WL 2022232 (M.D. Fla. Feb. 15, 2023)..........................................................14

*In re UnitedHealth Grp. Deriv. Litig.*,
754 N.W.2d 544 (Minn. 2008) ...........................................................................8, 9, 22

*Va. Bankshares v. Sandberg*,
501 U.S. 1083 (1991).................................................................................................18

*In re Verso Techs.*,
2010 WL 11598054 (N.D. Ga. June 30, 2010)....................................................22, 24

*Ward v. El Rancho Manana*,
945 N.W.2d 439 (Minn. Ct. App. 2020).....................................................................4

*Warner v. E.C. Warner*,
33 N.W.2d 721 (Minn. 1948) ....................................................................................24

*Whitten v. Clarke*,
41 F.4th 1340 (11th Cir. 2022) ...................................................................................7

*Winter v. Farmers Educ. Co-op.*,
107 N.W.2d 226 (Minn. 1961) ....................................................................................7

*Witzman v. Lehrman, Lehrman & Flom*,
601 N.W.2d 179 (Minn. 1999) ..................................................................................25

*In re Wynn Resorts Deriv Litig.*,
2019 WL 1429526 (D. Nev. Mar. 29, 2019) .....................................................3, 4, 5, 6

*Yu v. Frost*,
2019 WL 5225059 (S.D. Fla. Aug. 1, 2019) ...................................................5, 6

*Ziglar v. Abbasi*,
582 U.S. 120 (2017)..................................................................................16

*In re Zimmer Biomet Holdings Deriv. Litig.*,
2021 WL 3779155 (Del. Ch. Aug. 25, 2021) ....................................................24

**Statutes**

15 U.S.C. §78u-4(b)(2) .........................................................................14

Minn. Stat. §302A.241(1) .......................................................................8

Minn. Stat. §302A.251(4) ......................................................................22

Minn. Stat. §302A.251(5) ...................................................................11, 18

Minn. Stat. §302A.255(1) .......................................................................19

**Rules**

Fed. R. Civ. P. 23.1(b) ..........................................................................7

**Other Authorities**

18 Minn. Practice, Corp. Law §10.3 (3d ed. 2023) ..............................................8

Target and Defendants respectfully move to stay this action or, in the alternative, to dismiss it with prejudice under Federal Rules of Civil Procedure 23.1 and 12(b)(6).

Transfer.  At the threshold, Target and Defendants' motion to transfer this action and the related securities class action to the District of Minnesota is pending before the Court.  ECF 51.  As highlighted below, the issues in this case sound primarily in Minnesota law, *infra* II, III.B, which the District of Minnesota is best positioned to adjudicate.  As set forth in full in the transfer motion, transfer will promote judicial economy, convenience, and justice.  *See* ECF 51 at 22-23.

Stay.  If this Court declines to transfer this action, it should be stayed. Derivative claims belong to a company.  In tag-along derivative actions like this one, plaintiffs seek to invert claims that shareholders have asserted in securities litigation against a company.  They change the status of the company from that of a co-***defendant*** alongside its officers and directors to a ***plaintiff*** pitted against its officers and directors. Courts routinely stay tag-along actions during the pendency of securities litigation to avoid severe prejudice to the company.  That approach is necessary here.  Plaintiffs purport to represent Target.  They seek to have Target prove that Defendants (as individuals) made misleading statements with scienter.  But Target will defend itself in the securities class action by showing the opposite.  Permitting this action to proceed alongside the securities class action would thus force Target to undermine its own defense.  Target's interests, judicial economy, and justice all require a stay.  *Infra* I.

Dismissal.  If the Court does not stay the case, it must be dismissed for

1

numerous reasons.  Most fundamentally, Plaintiffs have failed to make a demand on Target's Board.  Again, derivative claims belong to the corporation, not its shareholders.  Thus, Rule 23.1 requires a shareholder plead their efforts to obtain the desired conduct from the Board before bringing suit.  That demand requirement is evaluated under the law of the state of incorporation—here, Minnesota.  And Minnesota's demand requirement is strict.  Absent extraordinary circumstances that would render demand impossible (i.e., "futile"), a shareholder *must* make a demand before suing.  Plaintiffs allege that demand is futile because the full Board faces a substantial likelihood of liability.  But Minnesota courts consistently reject that argument.  Minnesota law allows the Board to *delegate* consideration of the demand to an independent Special Litigation Committee ("SLC"), which means it is irrelevant whether the Board faces a risk of liability.  Plaintiffs' failure to make the required demand thus requires dismissal and the Court need not consider the merits.  *Infra* II.

Even if the Court considers whether Plaintiffs have stated a claim, dismissal is independently required.  The securities claims fail as a matter of law, as a company cannot deceive itself.  *Infra* III.A.  The remaining Minnesota law claims fail because the allegations show that the Board acted in good faith—in accord with Minnesota law—under conditions where any decision would have led to backlash.  *Infra* III.B.

## ARGUMENT

### I.   THE DERIVATIVE ACTION SHOULD BE STAYED DURING THE PENDENCY OF THE SECURITIES CLASS ACTION.

This Court should stay this case during the pendency of the securities class

action[1] to avoid putting Target in the impossible position of seeking to prove its own liability, while defending itself against the same liability.  District courts routinely exercise their discretion to stay tag-along actions in such circumstances.  *See infra* I.A (collecting cases).  In deciding whether to grant a stay, courts consider whether a stay would:  (1) prevent the movant from "suffer[ing] a hardship or inequity"; (2) "simplify and clarify the issues" or "otherwise promote judicial economy"; and (3) cause "prejudice to the non-moving party."  *Encarnacion v. Fin. Corp. of Am.*, 2018 WL 5631045, at *1 (M.D. Fla. Oct. 31, 2018).  Each factor weighs in favor of a stay.[2]

### A.    A Stay Is Necessary To Avoid Prejudice to Target.

Target will suffer severe prejudice absent a stay.  Without a stay, Target will defend the credibility of Defendants,[3] who are the individual defendants in the securities class action, only to turn around and undermine it here.  *Sellers v. Lawson*, 2009 WL 10698793, at *2-3 (S.D. Fla. Mar. 30, 2009); *Breault v. Folino*, 2002 WL 31974381, at *2 (C.D. Cal. Mar. 15, 2002); *In re Wynn Resorts Deriv Litig.*, 2019 WL 1429526, at *2 (D. Nev. Mar. 29, 2019).[4]  Plaintiffs themselves acknowledged this

---

[1] *In re Target Corp. Sec. Class Action Litig.*, 2:25-cv-00135-JLB-KCD (M.D. Fla.) ("*Sec. Litig.*").

[2] References to ¶ are to the Amended Complaint ("AC").  ECF 49.  References to "Ex." are to the exhibits to the declaration of Alexander J. Rodney, executed August 20, 2025.  Under the PSLRA, courts must consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" in addition to the complaint itself.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  The exhibits cited herein consist of SEC filings, evidence on which Plaintiffs rely, and matters subject to judicial notice.  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 (11th Cir. 1999).  Unless otherwise indicated, citations are omitted, and emphasis is added.

[3] While the AC refers to "Individual Defendants," Target is not a defendant but the real plaintiff-in-interest.  Thus, this brief refers to the individuals who are defendants as "Defendants."

[4] In addition to the severe prejudice to Target, it is also "not practical for two actors—[the derivative plaintiff] and [the Company's] board—to pursue divergent strategies in two simultaneous actions on behalf of the same entity."  *Brenner v. Albrecht*, 2012 WL 252286, at *5 (Del. Ch. Jan. 27, 2012).

3

conflict in their consolidation notice. ECF 44 at 3 ("Prosecution of the Derivative Actions would involve taking actions designed to refute the merits of the company's defense of the Direct Actions, and vice versa." (cleaned up)).

Specifically, the theory of liability in the securities class action is that Target, through Defendants, intentionally misled investors by misstating the risk of backlash to its 2023 Pride collection and the oversight of that risk. *See infra* n.5. Target's defense in that action hinges on showing that the individual Defendants, whose liability the securities plaintiffs seek to impute to Target, did not make the alleged misstatements or did not do so with scienter. *See Wynn*, 2019 WL 1429526, at *2 (staying tag-along to avoid "undermin[ing] [company's] defense of the securities" action (citing *Rosenblum v. Sharer*, 2008 WL 9396534, at *23-24 (C.D. Cal. July 28, 2008))).

Plaintiffs' theory in this action is that the same individual Defendants made the same allegedly false statements with the same scienter.[5] But, Target is "the real plaintiff in [this] derivative suit," not a co-defendant. *Ward v. El Rancho Manana*, 945 N.W.2d 439, 447 (Minn. Ct. App. 2020) (citing *Ross v. Bernhard*, 396 U.S. 531, 538-39 (1970)).[6] Thus, without a stay, Plaintiffs would seek to have Target prove the conduct that would make it liable in the securities class action. *Wynn*, 2019 WL 1429526, at *2. Plaintiffs themselves acknowledge this in their notice opposing consolidation of the

---

[5] *Compare* ¶¶13-14 (Defendants "fail[ed] to disclose" risk of backlash against Target's "ESG and DEI initiatives, such as the 2023 Pride Campaign" and that Target was "not conducting proper oversight" of that risk), *with Sec. Litig*, ECF 1 ¶¶17-21, 404-32 (Defendants **and Target** failed to disclose that "Target was subject to backlash from consumers because of its ESG/DEI mandates and the upcoming [2023] LGBT campaign" and misrepresented Target's "risk-oversight").

[6] Because the derivative claims here concern the internal affairs of a Minnesota corporation, *see* ¶24; *infra* II, III.B, Minnesota law applies, *Mukamal v. Bakes*, 378 F. App'x 890, 897 (11th Cir. 2010).

4

derivative action with the securities class action.  ECF 44, at 3 (Target would have to "defend itself in the Direct Actions while at the same time accusing its directors in the Derivative Actions…of related misconduct").[7]   Given the severe prejudice to the corporation absent a stay, courts stay tag-along derivative actions pending resolution of parallel securities actions, even when plaintiffs oppose a stay.  *See, e.g., Sellers*, 2009 WL 10698793, at *2-3; *Yu v. Frost*, 2019 WL 5225059, at *1 (S.D. Fla. Aug. 1, 2019); *Wynn*, 2019 WL 1429526, at *2, 4; *STEC*, 2012 WL 8978155, at *5-6, 9; *Ormat*, 2011 WL 3841089, at *4-5, 9; *Breault*, 2002 WL 31974381, at *2; *Rosenblum*, 2008 WL 9396534, at *8; *In re First Solar Deriv. Litig.*, 2012 WL 6570914, at *2 (D. Ariz. Dec. 17, 2012); *McDonald v. Abizaid*, 2018 WL 692006, at *2 (N.D. Ohio Feb. 2, 2018).[8]

## B.   A Stay Would Streamline the Issues and Promote Judicial Economy.

Courts routinely stay tag-along litigation during the pendency of securities actions to promote judicial economy.  *E.g.*, *Wynn*, 2019 WL 1429526, at *3; *First Solar*, 2012 WL 6570914, at *2; *Sellers*, 2009 WL 10698793, at *3.  Here, Plaintiffs seek relief in the form of damages they allege Target is exposed to through the securities class action.  ¶¶183, 190.  Thus, the outcome of the securities case would "materially affect Plaintiff's damages" claim, *Yu*, 2019 WL 5225059, at *1, which "favors a stay, given that the purported harm has not happened," *Wynn*, 2019 WL 1429526, at *3.

---

[7] Not only will Target be forced to take conflicting positions, but litigating this action will "divert [Target's] financial and management resources from the" securities class action.  *In re Ormat Techs.*, 2011 WL 3841089, at *4 (D. Nev. Aug. 29, 2011) (quoting *Breault*, 2002 WL 31974381, at *2); *see also In re STEC, Inc. Deriv. Litig.*, 2012 WL 8978155, at *6 (C.D. Cal. Jan. 11, 2012) ("[D]iversion of resources…weigh[s] in favor of granting a stay"); *accord Sellers*, 2009 WL 10698793, at *3.

[8] These considerations also highlight how Plaintiffs' opposition to a stay violates their fiduciary obligation as derivative plaintiffs to act in ***Target's best interests***.  *See infra* I.C.

5

### C.   A Stay Will Not Prejudice Plaintiffs.

Finally, a stay will *benefit*, rather than prejudice, Plaintiffs by helping them fulfill their "duty to act in the company's best interest." *Wynn*, 2019 WL 1429526, at *2; *STEC*, 2012 WL 8978155, at *4; *accord Breault*, 2002 WL 31974381, at *1; *see* ¶195 (promising to "adequately and fairly represent the interests of" Target).  Because Plaintiffs' opposition to a stay is "antagonistic to [Target]'s defense," it is improper and "illogical."  *STEC*, 2012 WL 8978155, at *7; *accord Routh v. Kurtz*, 2024 WL 5468511, at *1 (W.D. Tex. Dec. 2, 2024) (granting stay through " final judgment" in securities action); *Routh v. Kurtz*, 1:24-cv-01031, ECF 5 at 4-5 (W.D. Tex. Nov. 20, 2024) (stay was "in the best interests of the Company" in light of similarity of securities allegations and plaintiffs' duty to "act as the Company's fiduciaries"); *O'Connor v. Huber*, 2022 WL 17585247, at *2 (S.D. Ohio Dec. 12, 2022); *supra* I.A.[9]

Plaintiffs also cannot claim prejudice, having waited a year and a half after the first securities action to file suit.  *See Craig*, 2:23-cv-00599, ECF 1 (Aug. 8, 2023); *Lodge Mfg. v. Gibson Overseas*, 2019 WL 9443180, at *4 n.1 (C.D. Cal. Sept. 24, 2019) (no prejudice "given that Plaintiff delayed for seven months in filing this suit").[10]

## II.   THE DERIVATIVE ACTION MUST BE DISMISSED BECAUSE PLAINTIFFS FAILED TO MAKE A DEMAND ON TARGET'S BOARD.

The AC must be dismissed because Plaintiffs have not a made a demand on

---

[9] Regardless, "any potential harm [to plaintiffs] from delayed litigation is more than outweighed by the harm [to Target] of denying the stay." *STEC*, 2012 WL 8978155, at *8.

[10] A stay is also in Plaintiffs' interests because they seek Target's defense costs in the securities class action as damages. ¶¶181, 230, 261.  Thus, litigation of those actions will "materially affect [alleged] damages," if any, *Yu*, 2019 WL 5225059, at *1.  And if Target is not found liable in those actions, Plaintiffs would be "spared the expense of pursuing doomed claims," *Wynn*, 2019 WL 1429526, at *3.

6

Target's Board.  Because derivative suits "enforce a ***corporate*** cause of action," the company is entitled to determine if bringing such an action is in its best interests. *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 95-96 (1991).  A "precondition for the [derivative] suit" is "that the shareholder demonstrate that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions." *Id.* at 96 (cleaned up).  Thus, Rule 23.1 requires shareholders to plead an effort to make a demand, or "reasons for . . . not making the effort" with particularity so that courts can assess whether this requirement has been met.  Fed. R. Civ. P. 23.1(b).

### A.    Minnesota's SLC Statute Provides a "Road to Redress."

The Eleventh Circuit looks to the law of the state of incorporation to determine if the demand requirement is satisfied.  *Whitten v. Clarke*, 41 F.4th 1340, 1348 (11th Cir. 2022).  Target is incorporated in Minnesota.  ¶24.  Thus, Plaintiffs need to make a demand in accordance with Minnesota law, or "state with particularity why, ***under [Minnesota] law***, demand is excused."  *Whitten*, 41 F.4th at 1348.  They have not.

Under Minnesota law, a derivative suit is "an extraordinary remedy" that is available to shareholders only when there "is '***no other road to redress***.'"  *Winter v. Farmers Educ. Co-op.*, 107 N.W.2d 226, 233 (Minn. 1961).  Based on that standard, "it is arguable that demand is never futile in Minnesota."  *La. Mun. Police Emps. Ret. Sys. v. Finkelstein*, 2012 WL 10057353, at *4 (Minn. Dist. Ct. May 29, 2012); *In re Medtronic Deriv. Litig.*, 68 F. Supp. 3d 1054, 1067 (D. Minn. 2014) (citing "leading treatise[] on

Minnesota corporation law," 18 Minn. Practice, Corp. Law §10.3 (3d ed. 2023)).[11] To the extent demand is ever excused in Minnesota, it is only where the company or its board is "essentially defunct." *Pemberton v. Anderson*, 412 F.Supp.3d 1058, 1062 (D. Minn. 2019) (*Winter*'s holding rested on the fact that the defendant was a "loose, nonstock cooperative without salaried officers or employees" whose board had met just once in the prior *six years*). Neither Target nor its Board are defunct.

Demand is arguably never futile in Minnesota because Section 302A.241 of the Minnesota Business Corporations Act (the "SLC statute") permits a board to refer a demand to a "special litigation committee consisting of one or more independent directors or other independent persons to consider legal rights or remedies of the corporation and whether those rights and remedies should be pursued." Minn. Stat. §302A.241(1). Once established, the SLC "is not subject to a board's direction and control" and "thus enable[s] a corporation to dismiss or settle a derivative suit despite a conflict of interest on the part of some *or all directors*." *In re UnitedHealth Grp. Deriv. Litig.*, 754 N.W.2d 544, 550-51 (Minn. 2008); *see Pemberton*, 412 F.Supp.3d at 1062. Plaintiffs admit to the SLC statute's relevance, *see* ¶¶197, 221; they cannot escape that the SLC statute establishes a "road to redress" for them regardless of whether some—or even all—directors face a risk of liability, *UnitedHealth*, 754 N.W.2d at 550-51.

---

[11] *See also Kococinski v. Collins*, 935 F. Supp. 2d 909, 917 n.13 (D. Minn. 2013) (same). Plaintiffs incorrectly claim in their transfer opposition that *Kococinski* held that Delaware's substantial likelihood of liability test applies in Minnesota. ECF 56 at 14. But in *Kococinski*, the parties agreed to incorrectly apply the lesser Delaware standard, which the court held would also not have been met by plaintiffs. 935 F.Supp.2d at 917. The court nevertheless noted that under the correct, stricter Minnesota standard, "it is arguable that demand is never futile." *Id.* at 917, n.13.

## B.   Plaintiffs' Theories of Futility Fail Due to Minnesota's SLC Statute.

Plaintiffs say it would be futile for them to have made a demand because all Defendants face a "substantial likelihood of liability" under Plaintiffs' claims, ¶¶198-206, and because certain Defendants are "conflicted," ¶¶207-12, disabling them from "exercising [their] disinterested, good faith business judgment in considering whether to bring the claims in this action" or whether to appoint an SLC, ¶¶197-206, 209-10, 214, 221.  But those arguments sound in the law of Delaware, not Minnesota.

"Delaware and Minnesota law differ with respect to the requirements for demonstrating demand futility…." *Medtronic*, 68 F.Supp.3d at 1062.  The Minnesota Supreme Court has held that the SLC statute permits consideration of a demand "despite a conflict of interest on the part of some *or all directors*."  *UnitedHealth*, 754 N.W.2d at 550-51.  Thus, "analysis [of liability risk is] unnecessary; *the only question* is whether the plaintiff has alleged facts showing that it would be futile to ask the board to appoint an SLC," which "cannot be accomplished simply by pleading that the board is conflicted."  *Pemberton*, 412 F.Supp.3d at 1063.  "[T]he board—whether conflicted or not—*must* be given an opportunity to address the dispute *before* the dispute becomes the subject of a derivative action."  *Id.*

Indeed, Minnesota courts (state and federal) consistently hold that a plaintiff cannot plead futility "simply by pleading that the board is conflicted" or faces a "substantial likelihood of liability."   *Pemberton*, 412 F.Supp.3d at 1062-64.[12]

---

[12] *See also, e.g.*, *Gerring Props. v. Gerring*, 2017 WL 10662042, at *12 (Minn. Dist. Ct. Nov. 28, 2017); *Kitley v. IsoRay*, 2017 WL 4737244, at *6 (D. Minn. Oct. 19, 2017); *Medtronic*, 68 F.Supp.3d at 1061-

Reframing those same theories as impeding the Board's ability to consider appointing an SLC, ¶221, does not work either.  Conflict or liability risk cannot "show[] that it would be futile to ask the board to appoint an SLC" because the "very purpose of [the SLC statute] is to allow a conflicted board to appoint a disinterested decisionmaker." *Pemberton*, 412 F.Supp.3d at 1063.[13]  Dismissal is required.

### C.    Plaintiffs' Arguments Would Fail Under Delaware Law Too.

Regardless, Plaintiffs' conflict theories fail even under Delaware law.  To demonstrate demand futility under Delaware law, Plaintiffs must plead particularized facts showing a majority of the Board faces a substantial likelihood of liability under the claims alleged in the AC.  *Ritchie v. Baker*, 2025 WL 2048014, at *2 (Del. Ch. July 22, 2025).  The allegations here fail to show *any* of the directors face a substantial likelihood of liability, much less a *majority* of them.  *See infra* III.  And Plaintiffs "additional reasons" for demand futility also fail.  Plaintiffs allege that:

- Some directors "have personal and professional relationships" with Target partners.  ¶210.  But "mere personal friendship or a mere outside business relationship" is "insufficient to raise a reasonable doubt about...independence." *McDowell v. Bracken*, 317 F.Supp.3d 1162, 1174 (S.D. Fla. 2018), *aff'd*, 794 F. App'x 910 (11th Cir. 2019); *see Simeone v. Walt Disney*, 302 A.3d 956, 971 (Del. Ch. 2023).

- Target paid the Board.  ¶215.  That fails, as "ordinary director compensation alone is not enough to show" a conflict, *A.R. Demarco Enters. v. Ocean Spray Cranberries*,

---

62; *Finkelstein*, 2012 WL 10057353, at *3-4; *Hueler v. Seeland*, 2012 WL 7749256, at *8 (Minn. Dist. Ct. Dec. 5, 2012); *In re Patterson Cos. Sec., Deriv. & ERISA Litig.*, 479 F.Supp.2d 1014, 1039-40 (D. Minn. 2007); *In re Buca S'holder Deriv. Litig.*, 2005 WL 6750825, at *2-3 (Minn. Dist. Ct. Nov. 9, 2005).

[13] Plaintiffs also allege that the Board would refuse to appoint an SLC because it has not yet done so despite "six actions."  ¶221.  That's circular: Minnesota recognizes that decisions about appointing SLCs happen "*after* demand has been made."  *Silverstein v. Larson*, 2005 WL 435241, at *2 (D. Minn. Feb. 25, 2005).  Plaintiffs concede they have not made a demand, ¶197, and cannot use their own failure to take a required step as evidence that taking that step would be futile.  *Cf. Kococinski*, 935 F.Supp.2d at 919 n.17 (refusing to find futility "on the basis that the Board has not yet taken action").

2002 WL 31820970, at *5 (Del. Ch. Nov. 26, 2002).

- The Board might face uninsured liability for breaching fiduciary duties. ¶¶214-17. But that is "consistently rejected as a basis for finding demand futility." *Kococinski*, 935 F.Supp.2d at 919 n.17; *accord Kernaghan v. Franklin*, 2008 WL 4450268, at *7 (S.D.N.Y. Sept. 29, 2008). There is also no such risk of liability. *Infra* III.

Plaintiffs also speculate that any decision in response to a demand—either "to bring" or "not to bring" claims—would "invite[] backlash and boycotts." ¶219. But if that speculation were true, then Plaintiffs' claims risk the same backlash and are contrary to Plaintiffs' fiduciary duty to Target. *See supra* I.C. Dismissal is required.

Finally, dismissal is required because Rule 23.1(a) "prevent[s] shareholders from suing in place of the corporation…where the action would disserve the legitimate interests of the company or its shareholders." *Nat'l Ctr. for Pub. Pol'y Rsch. v. Schultz*, 2023 WL 5945958, at *4 (E.D. Wash. Sept. 11, 2023) (quoting *Daily Income Fund v. Fox*, 464 U.S. 523, 532 n.7 (1984)). A "goal of dismantling what [a plaintiff] sees as destructive DEI and ESG initiatives in corporate America" renders a derivative plaintiff inadequate, *id.* Here, Plaintiffs opposed transfer to Minnesota because of Florida's status as "a nationwide leader in actively opposing DEI and ESG." ECF 56 at 19-20. That political reason is contrary to Target's interests—particularly since Target continues to sell annual Pride collections, *see* ¶199, 204, 226, as Minnesota law expressly permits, *see* Minn. Stat. §302A.251(5), *infra* III.B—and requires dismissal. *See Schultz*, 2023 WL 5945958, at *4; *Pillsbury v. Honeywell*, 191 N.W.2d 406, 413 (Minn. 1971) (purpose improper where driven by "political and social beliefs.").[14]

---

[14] "[T]he absence of any appreciable support from other shareholders" also demonstrates inadequacy. *Rothenberg v. Sec. Mgmt. Co.*, 667 F.2d 958, 963 (11th Cir. 1982). Here, shareholders resoundingly

11

### III.   PLAINTIFFS HAVE NOT STATED ANY VIABLE CLAIM.

Because dismissal is required due to Plaintiffs' failure to make a demand, the Court need not consider the substance of Plaintiffs' claims. Should the Court do so, however, dismissal is independently required under Federal Rule 12(b)(6).

### A.   The Federal Securities Claims Must Be Dismissed.

Plaintiffs allege derivative federal securities claims under Sections 10(b), 14(a), and 20(a) of the Exchange Act. ¶¶222-45. These claims are the polar opposite of direct securities claims. Whereas direct securities claims assert that *investors* were defrauded *by* the *company*, the derivative claims here allege the *company* (Target) was itself misled.[15] Those derivative claims fail as a matter of law for several threshold reasons, including: (1) Target cannot defraud itself; and (2) voting rights claims—like the Section 14(a) claim—are direct claims, not derivative, under Minnesota law.

### 1.   The Section 10(b) Claim Fails To Plead Reliance or Scienter.

To plead a Section 10(b) claim, Plaintiffs must allege, among other elements, that Target relied on a material misrepresentation made with scienter by Defendants. *See Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1317 (11th Cir. 2019); *Edward J. Goodman Life Income Tr. v. Jabil Cir.*, 594 F.3d 783, 796-97 (11th Cir. 2010). Plaintiffs say the alleged misstatements caused Target to repurchase inflated stock. ¶¶154-156,

---

*oppose* Plaintiffs' anti-ESG/DEI agenda and have overwhelmingly voted to reject anti-ESG/DEI proposals each year since *Craig* was filed. Ex.D at 3 (95.6% rejection); Ex.F at 2 (91.5% rejection).

[15] This is one reason why the dismissal issues are distinct from the arguments that the Court previously considered in *Craig*. As set forth below, however, Defendants raise a causation argument as to the Section 14(a) claim that is based on similar law to that presented to the Court in *Craig*. Defendants respectfully submit that the Court previously overlooked binding Supreme Court and Eleventh Circuit authority that requires dismissal on causation grounds, *see infra* III.A.2 at 17.

12

187, 234-35. At the threshold, those claims fail in significant part because the Directors did not "make" many of the alleged misstatements.[16] And as to all alleged misstatements, Plaintiffs fail to plead *Target's* reliance or Defendants' scienter.

*No Reliance.* Plaintiffs plead no theory of reliance. Plaintiffs' theory appears to be based on Target's having made stock repurchases. ¶¶154-156, 234. But that fails as a matter of law. "Approval of stock repurchases by a disinterested majority of the board possessing authority to act and fully informed of all relevant facts will suffice to bar a Rule 10b-5 claim that the corporation...[was] deceived." *Staehr v. Miller*, 2010 WL 11030716, at *5 (S.D. Fla. Mar. 31, 2010). That makes sense. "[I]t is well-established that a corporation is charged with the knowledge of agents, including the board of directors," *id.* at *5-6 & n.2; *accord Mizzaro v. Home Depot*, 544 F.3d 1230, 1254 (11th Cir. 2008). So, as courts have repeatedly held, if the majority of the Board knew the truth and was disinterested in the repurchases, that "preclude[s] deception" of the company. *See Maldonado v. Flynn*, 597 F.2d 789, 795 (2d Cir. 1979).[17] That is the case here. Plaintiffs plead that all Defendants—the *entire* Board—knew the allegedly concealed truth. ¶¶149-53, 201. And directors are only "interested" in a transaction

---

[16] Only the "maker" of a misstatement can be liable for it. *Janus Cap. Grp. v. First Deriv. Traders*, 564 U.S. 135, 142-43 (2011). The Directors are not alleged to have authored or disseminated the 10-Ks, or the Backlash Statements, so they cannot be liable for those statements. *See Richard Thorpe & Darrel Weisheit v. Walter Inv. Mgmt.*, 111 F.Supp.3d 1336, 1355-56 (S.D. Fla. 2015); *In re Celgene Corp. Sec. Litig.*, 741 F.Supp.3d 217, 224-25 (D.N.J. 2024) (board or committee roles insufficient).

[17] *See also In re Citigroup Deriv. Litig.*, 2009 WL 2610746, at *10 (S.D.N.Y. Aug. 25, 2009) (same); *In re Brocade Commc'ns Deriv. Litig.*, 615 F.Supp.2d 1018, 1045 (N.D. Cal. 2009) (no reliance where knowledge of "improper conduct was widespread amongst the corporate decisionmakers"); *Atkins v. Tony Lama*, 624 F.Supp.250, 258 (S.D. Ind. 1985) (company "who acted through its allegedly culpable directors, could not have been deceived").

when they stand to "receive a personal financial benefit from [the] transaction that is not equally shared by the stockholders." *McDowell*, 317 F.Supp.3d at 1172 n.8. There is no allegation that Defendants received any personal financial benefit from the repurchases. Target's reliance cannot be pled. *Staehr*, 2010 WL 11030716, at *5-6.

*No Scienter.* To plead scienter, Plaintiffs must allege particularized facts supporting a strong inference of an "intent to defraud or severe recklessness on the part of the defendant." *Carvelli*, 934 F.3d at 1318; 15 U.S.C. §78u-4(b)(2). Plaintiffs' Section 10(b) claim must be dismissed because it impermissibly pleads scienter on a group basis. Securities fraud claims must satisfy both "the heightened pleading standards found in Federal Rule of Civil Procedure 9(b) and…the Private Securities Litigation Reform Act of 1995." *Carvelli*, 934 F.3d at 1317-18. Rule 9(b) requires particularized factual allegations and the PSLRA further requires that those facts "giv[e] rise to a strong inference" as to each defendant of "intent to defraud." *Id.* at 1318. "The lumping together of several defendants to allege generally their collective participation in a fraud scheme cannot meet Rule 9(b)'s particularity requirement," *United States v. Millennium Physician Grp.*, 2023 WL 2022232, at *5 (M.D. Fla. Feb. 15, 2023), let alone the PSLRA's, *Mizzaro*, 544 F.3d at 1238. Plaintiffs simply allege what the Defendants as a group, "knew" or "should have known." ¶¶149-53, 201, 226, 235, 251, 253. Thus, they have not pled scienter. *Edward J. Goodman Life Income Tr. v. Jabil Cir.*, 595 F.Supp.2d 1253, 1273 (M.D. Fla. 2009), *aff'd*, 594 F.3d 783 (11th Cir. 2010).

Plaintiffs' scienter allegations also fail because they impermissibly "rest on the

14

inference that defendants must have been aware of the misstatement based on their positions." *Jabil*, 595 F.Supp.2d at 1273.   Plaintiffs contend that Defendants' "associations with the Company…made them privy to confidential proprietary information concerning Target." ¶235; *see also* ¶¶149, 237, 239.   That fails.  *See Jabil*, 595 F.Supp.2d at 1273; *Metro. Transp. Pension Plan v. Welbilt*, 2020 WL 905591, at *4 (M.D. Fla. Feb. 6, 2020) (rejecting "position"-based scienter allegations).

Plaintiffs attempt to bolster these allegations by claiming that because Target "faced backlash due to its numerous LGBTQIA+ initiatives from 2014 up until 2023," Defendants knew or should have known of backlash to the 2023 Pride collection before it happened.  ¶¶149, 226.  This fails for the same reason Plaintiffs' reliance argument fails—any knowledge of potential backlash to the 2023 Pride collection that Defendants allegedly had is shared by Target as a matter of law.  *Staehr*, 2010 WL 11030716, at *5-6.  Thus, Defendants also would have understood that Target knew of past instances of backlash against Target, just as they were alleged to have known about them.   The only plausible, let alone strong and cogent, inference is that Defendants "reasonably believed that no further disclosure was required," which means Plaintiffs cannot plead scienter. *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F.Supp.2d 564, 586 (S.D.N.Y. 2013), *aff'd*, 566 F. App'x 93 (2d Cir. 2014).

    2.    **The Section 14(a) Claim Fails To Connect Any Misrepresentation to a Cognizable Injury.**

Section 14(a) "prohibit[s] the use of false statements in proxy solicitations," *Jabil*, 594 F.3d at 796, to help shareholders make a "fair and informed" vote, *Mills v.*

*Elec. Auto-Lite Co.*, 396 U.S. 375, 381, 396 (1970).  That claim cannot be pursued derivatively in Minnesota.  Plaintiffs also cannot plead causation as a matter of law.

**Barred by Minnesota Law.**  The Section 14(a) claim fails because there is no **derivative** claim under Minnesota law related to misleading proxy materials.  A derivative claim must "alleg[e] an injury to the corporate entity."  *In re Medtronic S'holder Litig.*, 900 N.W.2d 401, 406 (Minn. 2017).  In contrast, a direct claim "alleges an injury to the shareholder" himself.  *Id.*  As with demand futility, the "law of the state…where a company is incorporated"—here Minnesota—determines "whether a claim brought under a federal statute is direct or derivative," *Freedman v. magicJack Vocaltec*, 963 F.3d 1125, 1133-34 (11th Cir. 2020).[18]  As Plaintiffs stated in their notice of consolidation, they agree, ECF 44 at 2.  In Minnesota, claims based on allegations that shareholders relied on misrepresentations in deciding how to act belong uniquely to the shareholder, not the corporation.  *See N.W. Racquet Swim & Health Clubs v. Deloitte & Touche*, 535 N.W.2d 612, 619 (Minn. 1995); *In re Medtronic*, 2015 WL 1387937, at *7 (Minn. Dist. Ct. Mar. 20, 2015), *aff'd*, 2016 WL 281237 (Minn. Ct. App. Jan. 25, 2016), *aff'd in part, rev'd in part on other grounds*, 900 N.W.2d 401 (Minn. 2017).  Plaintiffs allege that proxy statements "were material to Plaintiffs in voting on

---

[18] The Supreme Court previously stated in *dicta* that a Section 14(a) claim can be derivative as a matter of federal law.  *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964).  That is irrelevant because it is Minnesota law, not federal law, that controls the question of whether a claim can be pursued derivatively.  *Freedman*, 963 F.3d at 1132-33; *see also Lee v. Fisher*, 70 F.4th 1129, 1146-47 (9th Cir. 2023) (explaining how *Borak* incorrectly addressed this as an issue of federal common law but *Kamen*, 500 U.S. at 98-99, subsequently clarified it is an issue of state law).  The Supreme Court has also subsequently questioned the reasoning of *Borak* and has repeatedly declined to follow it in other contexts.  *See, e.g.*, *Ziglar v. Abbasi*, 582 U.S. 120, 132 (2017).

the matters set forth *for stockholder determination*." ¶227. That cannot be litigated derivatively under Minnesota law. *Medtronic*, 2015 WL 1387937, at *7-8.

    ***No Transaction or Loss Causation.*** Binding Eleventh Circuit precedent also requires dismissal of Plaintiffs' Section 14(a) claim because the injuries were not directly caused by the shareholder vote. Causation cannot be based on an injury stemming "from mismanagement of the corporation," rather than "the transactions approved via the proxy solicitation materials." *Jabil*, 594 F.3d at 797. In other words, "the losses to the company ***must have resulted directly from the [shareholder] vote***, not from the omission itself." *In re The Home Depot Deriv. Litig.*, 223 F.Supp.3d 1317, 1331 (N.D. Ga. 2016) (citing *Jabil*, 594 F.3d at 796). Where shareholders elect directors that subsequently engage in alleged misconduct causing injury, those injuries are "only *indirectly* caused" by the proxy vote, and there is no causation for a Section 14(a) claim. *McDowell*, 317 F.Supp.3d at 1181 (quoting *Jabil*, 594 F.3d at 797).

    That's precisely the case here. In *Jabil*, the Eleventh Circuit held that "[t]he adoption of a compensation scheme and reelection of directors was not an essential link to the losses of which the shareholders complain," which arose from misconduct that was "not accomplished or endorsed by any proxy solicitation materials." 594 F.3d at 797. Likewise, Plaintiffs allege that the proxies led to the approval of executive compensation, the Board's reelection, and "exposed Target to securities class actions and derivative suits."[19] ¶¶229-31. The Board then allegedly failed to monitor or

---

[19] Plaintiffs' allegation that their own action harms Target is yet another reason their claim must be dismissed. Plaintiffs have a fiduciary duty to adequately represent Target's interest. *Supra* II.

disclose the risk of backlash as to the 2023 Pride collection, which allegedly resulted in losses in "market valuation."  ¶125.  That is exactly the sort of indirect injury foreclosed by *Jabil*.  The 2023 Pride collection "was not accomplished or endorsed by" the proxies, 594 F.3d at 797—the shareholders did not vote on the collection at all.[20]

### 3.    The Section 20(a) Claim Fails Without a Primary Violation.

With no "'primary violation'" the §20(a) claim fails.  *Carvelli*, 934 F.3d at 1330.

### B.    The Minnesota Law Claims Must Be Dismissed.

Plaintiffs' hodgepodge of state law claims also fail.  They allege breach of fiduciary duty, waste, aiding and abetting, and unjust enrichment. ¶¶246-68.  Because these claims "concern the internal affairs" of Target, they are governed by Minnesota law.  *Mukamal*, 378 F. App'x at 896.  Undergirding these claims is a suggestion that the Board improperly considered stakeholders' interests, rather than "giv[ing] shareholder interests primacy," ¶¶54-57.  That fails as a matter of law; Minnesota expressly permits its corporations and directors to "consider the interests of the corporation's employees, customers, suppliers, and creditors, the economy of the state and nation, community and societal considerations" in determining the corporation's "best interests," Minn. Stat. §302A.251(5).  Thus, any suggestion that Defendants

---

[20] The alleged injury arising from "executives receiving executive compensation," ¶231, is also indirect because the vote was non-binding.  Both the Supreme Court and the Eleventh Circuit have held that "non-binding 'say-on-pay'" votes are too indirectly connected to any alleged losses for loss causation. *Va. Bankshares v. Sandberg*, 501 U.S. 1083, 1105-06 (1991); *McDowell*, 794 App'x at 917; *accord Rubenstein ex rel. Jefferies Fin. Grp. v. Adamany*, 2023 WL 6119810, at *2 (2d Cir. Sept. 19, 2023); *Kirwin v. Price Commc'ns*, 274 F.Supp.2d 1242, 1251 (M.D. Ala. 2003), *aff'd in part, rev'd in part on other grounds*, 391 F.3d 1323 (11th Cir. 2004); *Hastey v. Welch*, 449 F.Supp.3d 1053, 1062, 1067 (D. Kan. 2020); *Swanson v. Weil*, 2012 WL 4442795, at *9 n.7 (D. Colo. Sept. 26, 2012).

must focus solely "on maximizing value for the benefit of shareholders" is "in direct conflict with" Minnesota law. *Dixon v. Ladish Co.*, 785 F.Supp.2d 746, 753 (E.D. Wis. 2011); *see also, e.g.*, *Amanda Acquisition v. Universal Foods*, 708 F.Supp. 984, 1012-13 (E.D. Wis. 1989) (balancing of constituent interests is "a business judgment call not to be second-guessed by this or any other court"), *aff'd*, 877 F.2d 496 (7th Cir. 1989); *Baron v. Strawbridge & Clothier*, 646 F.Supp. 690, 697 (E.D. Pa. 1986) (consideration of "employees, customers and community" proper under constituency statute).

### 1.    Plaintiffs Cannot State a Duty of Loyalty Claim.

"Under Minnesota law, the fiduciary duty of loyalty prohibits directors from serving 'their own personal interests at the expense of the corporation and its stockholders.'" *Lusk v. Akradi*, 2017 WL 3382301, at *4 (D. Minn. Aug. 6, 2017) (cleaned up) (quoting *Diedrick v. Helm*, 14 N.W.2d 913, 919 (Minn. 1944)). Minnesota's conflict-of-interest analysis focuses on "material financial interest[s]." *Id.* at *6 (quoting Minn. Stat. §302A.255(1)).  Where "the Board's [financial] interest aligned rather than conflicted with" shareholders, a loyalty breach claim fails. *Id.* at *4-5; *see also Chen v. Howard-Anderson*, 87 A.3d 648, 670-71 (Del. Ch. 2014) (holding shares creates "powerful economic (and psychological) incentives" to act in shareholders' interests). Here, Defendants had significant Target holdings, *see* Ex.A at 34 (3,871-479,377 shares); Ex.B at 33 (2,630-508,848 shares), aligning their interests with those of shareholders. And the AC contains *zero* allegations to the contrary.

Instead, Plaintiffs plead only that Defendants (1) failed to oversee Target's internal controls; and (2) knowingly issued misstatements or omissions. Both fail.

19

*Monitoring.*    Plaintiffs first allege that Defendants, including members of Target's Audit Committee, "failed in their duty of oversight," as they "had actual or constructive knowledge that internal controls" as to "DEI and ESG initiatives and public disclosures…were not adequately maintained."  ¶¶252-53.  Commonly known as a *Caremark* claim, this has been described as "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win."  *Stone v. Ritter*, 911 A.2d 362, 372 (Del. 2006).  In the nearly 30 years since *In re Caremark Int'l Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996), no Minnesota court has found liability based on this theory, *see Lusk*, 2017 WL 3382301, at *5 (noting difficulties of *Caremark* claim).

To plead a *Caremark* claim, Plaintiffs must allege particularized facts showing either that "(1) the directors utterly failed to implement any reporting or information system or controls; or (2) having implemented such a system or controls, [they] consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention."  *Iron Workers Mid-S. Pension Fund v. Davis*, 93 F.Supp.3d 1092, 1098 (D. Minn. 2015) (cleaned up) (quoting *Stone*, 911 A.2d at 370).  Plaintiffs allege neither.  They do not allege that the Board failed to implement a monitoring system.  To the contrary, they admit that Target implemented oversight mechanisms within its Government & Sustainability and Audit & Risk Committees.  ¶¶91, 94-95, 109, 171-75.  The AC also alleges zero facts showing that the Board consciously failed to monitor its operations.

In fact, Plaintiffs' allegations show Target repeatedly monitoring and ***responding***

20

*to* adverse customer reactions to its Pride collections, "from both sides of the political spectrum." ¶148; *see also* ¶¶76, 123-24, 134-35, 146, 219. For example, in 2015 Target allegedly phased out gender-based signage in response to guest commentary. ¶65. In 2020, "Target ceased selling two books...that were skeptical of transgenderism." ¶76. In response to "public backlash," Target "revers[ed] course and reinstate[d] the books the following day." *Id.* When Target's 2021 collection "received customer backlash" from the left for "miss[ing] the mark entirely on the LGBTQIA+ messaging" and being "homophobic," Target revamped its 2022 collection by "team[ing] up with LGBTIA+ designers [and] entrepreneurs," which resulted in the 2022 collection "receiv[ing] a more positive response than the 2021 collection." ¶¶80-82. And when confronted with backlash to its 2023 collection, ¶¶123-24, Target "began to backtrack" within weeks," moving Pride merchandise "[f]rom the front of the store to the back of the store" and publicly "announced changes to its 2023 Pride Campaign." ¶¶129-33. Finally, "Target phased out many long-term DEI initiatives in January 2025" after "many years of data, insights, listening and learning." ¶143. These allegations show Target *did* have oversight systems and *was* responding to customers, defeating the *Caremark* claim. *In re GoPro*, 2020 WL 2036602, at \*13 (Del. Ch. Apr. 28, 2020).

**Public Statements.** Plaintiffs also allege that Defendants, including the Audit Committee members, "intentionally or recklessly" issued and failed to correct "misleading statements." ¶¶249-51; *see also* ¶¶177-78. But this theory fails for the same reason that Plaintiffs' derivative securities claims fail. *See supra* III.A. Among other

21

reasons, Plaintiffs' group pleading and reliance on Defendants' Board membership and executive roles cannot establish an "intentional or reckless" breach or actual or constructive knowledge.  *See supra* III.A.1 (scienter allegations fail).[21]

### 2.  Plaintiffs Cannot State a Duty of Care Claim for Two Reasons.

*Exculpation.*  The Board is immune from any duty of care claim.  If a Minnesota corporation's charter includes an exculpatory clause, directors "will not be liable for breaches of fiduciary duty unless they breach the duty of loyalty, act in bad faith, engage in intentional misconduct, or commit a knowing violation of law."  *Kococinski*, 935 F.Supp.2d at 917-18 (citing Minn. Stat. §302A.251(4)); *In re Verso Techs.*, 2010 WL 11598054, at *16-17 (N.D. Ga. June 30, 2010) (applying Minnesota law to dismiss duty of care claim as exculpated).  Target's charter includes an exculpatory clause.  Ex.C, art.IV.[22]  And, as set forth above—and contrary to Plaintiffs' boilerplate allegation, ¶216—Plaintiffs fail to adequately allege a breach of the duty of loyalty, bad faith, or any knowing or intentional misconduct or violation of law.  *Supra* III.B.

*Business Judgment.*  Additionally, Defendants did not breach the duty of care.  There is no breach of care if Defendants were "disinterested" and made "an informed business decision, in good faith."  *UnitedHealth*, 754 N.W.2d at 551.  As set forth above, there is no allegation of interestedness, Plaintiffs plead (and therefore concede) that the Board was informed of the relevant risks, and there is no cognizable allegation

---

[21] Given these scienter deficiencies, the attempt to base a fiduciary duty claim on the alleged repurchase of "stock at prices [Defendants] knew were artificially inflated" also fails.  ¶15.

[22] The Court may take judicial notice of Target's articles of incorporation.  *Bakhaty v. CHI St. Vincent Hot Springs*, 2025 WL 1568838, at *6 (E.D. Ark. June 3, 2025); *see supra* n.2.

22

of bad faith. *Supra* III.B.1; *see also Holdahl v. Bioergonomics*, 2012 WL 3061774, at \*10 (Minn. Dist. Ct. Feb. 8, 2012) (Minnesota courts will not substitute their judgment for that of a company board where there is "no evidence" that the board's "actions were not in good faith"), *aff'd*, 2013 WL 401885 (Minn. Ct. App. Feb. 4, 2013).

Instead, the allegations show Target will receive backlash *no matter its course of conduct*. ¶148; *see supra* III.B.1. Plaintiffs allege that Target faced backlash from the left for pulling back on DEI/ESG. ¶146. And they admit that "customers from *both sides of the political spectrum* have already boycotted the Company in response to both its promotion *and* recission of its DEI and ESG activities." ¶219. In such circumstances, courts should not and do not second guess a board's judgment. For example, a recent Delaware case seeking inspection of Disney's records found no basis to even *investigate* wrongdoing as to Disney's opposition to Florida's "Don't Say Gay" law. *Simeone*, 302 A.3d 956. That decision was subject to Delaware's "credible basis" standard, which "sets the lowest possible burden of proof." *Seinfeld v. Verizon Commc'ns*, 909 A.2d 117, 123 (Del. 2006). There was no credible basis, as "disagreement with a business judgment is not evidence of wrongdoing." *Simeone*, 302 A.3d at 972 (cleaned up). A fiduciary duty claim can't be based on second-guessing a board's judgment in balancing how to "avoid[] political blowback" against harm to other interests like "corporate culture and employee morale." *Id.*; *accord Schultz*, 2023 WL 5945958, at \*3-4 (dismissing derivative challenge to DEI policies). Even under Delaware's heightened "enhanced scrutiny" test that is inapplicable here, it would not

23

matter if the Court might have made a different decision or if "subsequent events may have cast doubt on the board's determination." *Chen*, 87 A.3d at 673. Even if—as Plaintiffs allege—the Board "misjudged," that cannot support a duty of care claim. *Matter of Bear Stearns Litig.*, 23 Misc. 3d 447, 472 (N.Y. Sup. Ct. Dec. 4, 2008).[23]

### 3.    **Plaintiffs' Miscellaneous Claims Fail.**

***Waste.***  A waste claim must allege specific facts showing that consideration for the alleged transactions was "so grossly inadequate as to be evidence of fraud." *Warner v. E.C. Warner*, 33 N.W.2d 721, 727 (Minn. 1948); *accord Brehm v. Eisner*, 746 A.2d 244, 264 (Del. 2000).  Plaintiffs allege waste from (i) "excessive compensation and bonuses"; (ii) lost "profits and valuation" due to the 2023 Pride collection ; and (iii) stock repurchases at "artificially inflated prices."  ¶261.  Each theory fails.

Executive compensation is not wasteful when it is approved by shareholders, *see Horn Silver Min. v. Ryan*, 44 N.W. 56, 57 (Minn. 1889); *Verso*, 2010 WL 11598054, at *23, which is the case here., ¶¶227; Ex.D at 2; Ex.E at 2.[24]  "[M]istake[s] of judgment" also are not waste.  *Warner*, 33 N.W.2d at 727.  Thus, Plaintiffs' "*ex post*"

---

[23] Cornell and Fiddelke's alleged signing of SEC filings, ¶¶88-89, 104, 200, 208 n.83, also cannot state a duty of care claim. *First*, the misstatements theory fails. *Supra* III.A. *Second*, the mere act of signing SEC filings, absent an allegation of "[s]evere recklessness," does not breach the duty of care. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1264, 1266 (11th Cir. 2006); *In re Zimmer Biomet Holdings Deriv. Litig.*, 2021 WL 3779155, at *20 (Del. Ch. Aug. 25, 2021). As discussed, Plaintiffs do not adequately plead scienter. *Supra* III.A.1. The same is true for the alleged violations of Target's Code of Ethics and corporate charters. ¶¶164-75. Such claims fail where, as here, it is not alleged that Defendants "*intentionally* shirked [Target's] policies or were even aware that such policies were not being followed." *Markewich v. Collins*, 622 F.Supp.2d 802, 810 n.10 (D. Minn. 2009); *see also Newman v. KKR Phorm Invs.*, 2023 WL 5624167, at *8 & n.56 (Del. Ch. Aug. 31, 2023) (company codes do not create "additional or new fiduciary duties"); ¶214 (no scienter alleged for Code of Ethics violations theory).
[24] The proxies fully disclosed the components of executive compensation. ¶¶99, 113-14, 116-17.

24

conclusion "that the [2023 collection] was unreasonably risky" is not waste. *See Brehm*, 746 A.2d at 263. And stock repurchases at market prices are not waste "even if that price was artificially inflated." *Staehr*, 2010 WL 11030716, at *6-7, 10.[25]

***Aiding and Abetting.*** This claim requires both a primary violation and scienter. *Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 187-88 (Minn. 1999). Plaintiffs plead neither. Plaintiffs allege their fiduciary duty claim as the primary violation. ¶257. It fails, *supra* III.B.1-2, so this claim fails. Plaintiffs must also plead that each Defendant "***actually knew***" of the underlying wrongs." *Kamal v. Baker Tilly US, LLP*, 2022 WL 1050053 (D. Minn. Apr. 7, 2022). No such knowledge is pled.

***Unjust Enrichment.*** Unjust enrichment requires allegations that "a party has knowingly received something of value, not being entitled to the benefit, and under circumstances that would make it unjust to permit its retention." *Southtown Plumbing v. Har-Ned Lumber*, 493 N.W.2d 137, 140 (Minn. Ct. App. 1992). Plaintiffs allege "unjust" compensation based on alleged "bad faith" and "improper" conduct. ¶266. But Plaintiffs plead no misconduct, *supra* III.A-B.2, so the claim fails. *Iron Workers Mid-S. Pension Fund v. Davis*, 2013 WL 6858567, at *10 (D. Minn. Dec. 30, 2013).

## CONCLUSION

This case should thus be transferred; failing that, it should be stayed through resolution of the Securities Class Action, or alternatively, dismissed with prejudice.

---

[25] And there is no allegation that the repurchases were made to cause artificial inflation. *Supra* III.A.1.

25

Date: August 20, 2025                    Respectfully submitted,

                                         /s/ *Sandra C. Goldstein*

Traci T. McKee                           Sandra C. Goldstein, P.C. (*pro hac vice*)
FAEGRE  DRINKER  BIDDLE  &               Alexander J. Rodney (*pro hac vice*)
REATH LLP                                Jacob M. Rae (*pro hac vice*)
1500 Jackson Street, Suite 201           Ashley P. Grolig (*pro hac vice*)
Fort Myers, Florida 3390                 KIRKLAND & ELLIS LLP
Telephone: (239) 286-6910                601 Lexington Avenue
traci.mckee@faegredrinker.com            New York, NY 10022
                                         Telephone: (212) 446-4779
*Counsel for Target Corporation and*     sandra.goldstein@kirkland.com
*Defendants*                             alexander.rodney@kirkland.com
                                         jacob.rae@kirkland.com
                                         ashley.grolig@kirkland.com

26

## LOCAL RULE 3.01(G) CERTIFICATION

Pursuant to Local Rule 3.01(g), the undersigned certifies that counsel for Target and Defendants have conferred with counsel for Plaintiffs by email and phone, and that Plaintiffs oppose the relief requested in this motion.

/s/ *Sandra C. Goldstein*

Sandra C. Goldstein, P.C. (*pro hac vice*)
*Lead Counsel*
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4779
sandra.goldstein@kirkland.com